[Civ. No. 45054. First Dist., Div. Two. Nov. 17, 1980.]

JOSEPH P. MAZZOLA, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

COUNSEL

Lewis, Rouda & Lewis, Marvin E. Lewis and Lawrence James Less for Plaintiff and Appellant.

George Agnost, City Attorney, and John A. Etchevers, Deputy City Attorney, for Defendants and Respondents.

OPINION

MILLER, J.—By resolution of the Board of Supervisors for the City and County of San Francisco, plaintiff and appellant Joseph P. Mazzola (hereinafter Mazzola), was removed from the office of airports commissioner of the City and County of San Francisco on September 22, 1976. Thereafter, the superior court denied Mazzola's petition for a peremptory writ of administrative mandamus to set aside the board's decision and restore to him all the rights of an airports commissioner. Mazzola appeals from the superior court judgment.

At the board of supervisors hearing, which was described as neither a proceeding under the Code of Civil Procedure nor the California Administrative Code but under the general common law rules applying to the operation of administrative agencies, evidence revealed that Mazzola was appointed to the office of airports commissioner on September 1, 1970 and served continuously in that position until September 1, 1976. Concurrently with his term of service as commissioner, Mazzola occupied the position of business manager and financial secretary-treasurer of Local 38 of the Plumbers' Union in San Francisco. He had been a business official of Local 38 for approximately 23 years at the time of the hearing before the board of supervisors.

On or about March 31, 1976, 17 craftwork unions, whose members included employees of the City and County of San Francisco, engaged in a strike against the city and county.[1] The strike continued until May 8, 1976. Local 38 was among the striking unions.

It is undisputed that Mazzola, as business manager of Local 38, recommended that members of his union go on strike. Thereafter, members of the union unanimously voted to adopt the recommendation. The Plumbers' Union joined with other unions in the general strike and worked in conjunction with a strategy strike committee. Mazzola, as head of his union, was a representative on the strategy strike committee.

Prior to the formation of an emergency committee, William Dwyer, San Francisco Airport Director, met with Mazzola, Jack Crowley (the executive director of the San Francisco Labor Council), and representatives from the firemen's union to discuss fire protection at the airport. Thereafter, Mazzola recommended to the strike strategy committee that fire services be maintained at the airport.

Subsequently, the strike emergency committee was established. This committee was set up in order to give dispensations so that union members could cross picket lines and perform necessary duties in life-threatening situations. A minimum of three committee members was required to authorize emergency work during the strike. Authorization for emergency work by a single union official was considered a strike-breaking activity.

During the strike, certain public services were interrupted. Public employees were picketing city facilities, the municipal railway was not operating, sewer repair and paving ceased being performed by city employees, trash accumulated throughout the city, water pressure was decreased, and damage was caused by breaks in the water mains. At the airport, the heating system was inoperative due to the lack of hot

---

[1] Several leaders of both striking unions and unions supporting the strike were, like Mazzola, public officials. For example, Harry Bridges, president of the International Longshoremen-Warehousemen's Union, was a port commissioner; Stan Jensen, directing business representative of the International Association of Machinists, was a commissioner on the San Francisco Redevelopment Agency; Matti Jackson, manager of the San Francisco Joint Board of the International Ladies' Garment Workers' Union, was president of the Board of Permit Appeals; and Leon Bruschera, secretary of the fireman's union, was a Retirement Board commissioner.

water and toilets were clogged. During a meeting of the Airports Commission, which Mazzola did not attend, a resolution was passed to request a special $200,000 appropriation to cover the extra cost of having police work overtime at the airport. However, the airport actually made money during the strike. Due to the savings in the payroll, there was a budget surplus.

There was testimony that the Airports Commission deals only with policy matters; negotiations in the setting of wage standards is handled by the director of the airport and his staff. At no point did the airport's director come to the commission with any problems concerning the strike, nor did any matter on the Airports Commission agenda have anything to do with the strike. Several commissioners stated that there was never any official business that came before the commission on which Mazzola had to vote that could in any way benefit Mazzola or his union. Moreover, during the strike, Mazzola never attended an Airports Commission meeting, nor directly or indirectly concerned himself with the transaction of airport business in his official role of airports commissioner.

On three different occasions during the course of the strike, Mayor George Moscone called Mazzola concerning a broken water main which was causing loss of water pressure to residents and businesses as well as to hospitals. The mayor requested that Mazzola have someone repair the water main. Mazzola refused to do so. The mayor never called the strike emergency committee for assistance in this matter.

On September 1, 1976, George Moscone suspended Mazzola and filed charges against him on the ground of official misconduct pursuant to section 8.107 of the Charter of the City and County of San Francisco. The charges were based on the fact that 1) Mazzola held the positions of both airports commissioner and business manager of Local 38 of the Plumbers' Union; 2) from March 31, 1976, until May 8, 1976, Local 38, in concert with other unions, perpetrated a strike against the city and county; 3) as a result of this strike, services were disrupted and impaired, the city and county lost revenues it would otherwise have received, and citizens were deprived of needed public service; and 4) Mazzola encouraged, aided, and helped to further the initiation, perpetration, and continuance of said strike against the city and county contrary to its interests and the interests of the people of San Francisco. Although the mayor's charges were based solely on section 8.107 of the city charter, during final argument to the board of supervisors, the city

attorney argued that violation of section 1126 of the Government Code constituted the official misconduct of Mazzola. Additionally, he asserted that Mazzola breached his duty as a trustee for the people of San Francisco.

The board of supervisors found Mazzola had committed acts constituting official misconduct and resolved to remove him from office.

On appeal, we first note that although Mazzola's appointed term to the Airports Commission expired on August 31, 1977, the instant case is not moot. By virtue of being found guilty of official misconduct, Mazzola can never run for office nor be appointed as an official of the City and County of San Francisco during his lifetime. This is a severe consequence that will forever stigmatize Mazzola and his family. Thus, if the judgment against Mazzola was erroneous, he is entitled to clear his name even though his appointment expired. "[A]ppellant should not be foreclosed of his right to remove this blot upon his record, if in fact he was wrongfully convicted,. . ." (*In re Lincoln* (1929) 102 Cal.App. 733, 739 [283 P. 965].) Therefore, this appeal is proper even though its purpose may merely offer appellant a chance to clear his name. (*People v. Chamness* (1930) 109 Cal.App. Supp. 778, 781 [288 P.20]; see also, *In re Katherine R.* (1970) 6 Cal.App.3d 354, 357 [86 Cal.Rptr. 281].)

Secondly, we perceive the real issue in the instant appeal to be whether a city official who is also a leader of a public employees' union is guilty of official misconduct under the terms of the present San Francisco Charter when he recommends action and supports his union in a strike against the city.

Mazzola first contends the term "official misconduct" found in section 8.107[2] of the city charter is unconstitutionally vague so that he was effectively deprived of due process under the Fifth and Fourteenth Amendments. We disagree.

---

[2]Section 8.107 of the San Francisco Charter provides: "Suspension and Removal. Any elective officer, and any member of the civil service commission or public utilities commission or school board may be suspended by the mayor and removed by the board of supervisors for official misconduct, and the mayor shall appoint a qualified person to discharge the duties of the office during the period of suspension. On such suspension, the mayor shall immediately notify the supervisors thereof in writing and the cause therefor, and shall present written charges against such suspended officer to the board of supervisors at or prior to its next regular meeting following such suspension, and shall immediately furnish copy of same to such officer, who shall have the right to appear with counsel before the board in his defense. Hearing by the supervisors shall be

■ It is well settled that "[c]ivil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies. [Citations.]" (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375].) The applicable test is "(1) whether the regulation is sufficiently specific to provide fair warning of which conduct is prohibited and which permitted; and (2) whether there exists a relationship or nexus between the prohibited conduct and the employee's fitness to perform the duties required by the position." (*California School Employees Assn.* v. *Foothill Community College Dist.* (1975) 52 Cal.App.3d 150, 154 [124 Cal.Rptr. 830].)

■ The words "official misconduct," under attack here, are virtually the same words as "misconduct in office," the language relied on in article IV, section 18, subdivision (b) of the California Constitution which provides the basis for impeachment of state officers and judges of the state courts.

Black's Law Dictionary defines "official misconduct" as "[a]ny unlawful behavior by a public officer in relation to the duties of his office, willful in its character, including any willful or corrupt failure, refusal, or neglect of an officer to perform any duty enjoined on him by law."

---

held not less than five days after the filing of written charges. If the charges are deemed to be sustained by not less than a three-fourths vote of all members of the board, the suspended officer shall be removed from office; if not so sustained, or if not acted on by the board of supervisors within thirty days after the filing of written charges, the suspended officer shall thereby be reinstated.

"The mayor must immediately remove from office any elective official convicted of a crime involving moral turpitude, and failure of the mayor so to act shall constitute official misconduct on his part.

"Any appointee of the mayor, exclusive of civil service, recreation and park, and public utilities commissioners, and members of the school board, may be removed by the mayor. Any nominee or appointee of the mayor whose appointment is subject to confirmation by the board of supervisors, except the chief administrative officer and the controller, as in this charter otherwise provided, may be removed by a majority of such board and with the concurrence of the mayor. In each case, written notice shall be given or transmitted to such appointee of such removal, the date of effectiveness thereof, and the reasons therefor, a copy of which notice shall be printed at length in the journal of proceedings of the board of supervisors, together with such reply in writing as such official may make. Any appointee of the mayor or the board of supervisors guilty of official misconduct or convicted of crime involving moral turpitude must be removed by the mayor or the board of supervisors, as the case may be, and failure of the mayor or any supervisor to take such action shall constitute official misconduct on his or their part."

(Black's Law Dict. (rev. 4th ed. 1968) p. 1236, col. 2.) The phrase includes any willful malfeasance, misfeasance or nonfeasance in office. (*Coffey* v. *Superior Court* (1905) 147 Cal. 525, 529 [82 P. 75].)

■ "To warrant the removal of an officer, the misconduct, misfeasance, or malfeasance must have direct relation to and be connected with the performance of official duties, and amount either to maladministration or to wilful and intentional neglect and failure to discharge the duties of the office. Malfeasance, as ground for removal of a public officer, has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful. Misfeasance has reference to the performance by an officer in his official capacity of a legal act in an improper or illegal manner. Malconduct in office, like misconduct in office, includes such acts as amount to a breach of the good faith and right action that are impliedly required of all officers." (63 Am.Jur.2d, Public Officers and Employees, § 190, p. 743.)

Recent California case law has held that the act or omission for which an officer may be removed does not necessarily imply corruption, criminal intent or the commission of a crime, but simply a purpose or willingness to commit a proscribed act or to be guilty of an omission. (*People* v. *Wachter* (1976) 58 Cal.App.3d 911, 919 [130 Cal.Rptr. 279]; *People* v. *Hale* (1965) 232 Cal.App.2d 112, 118-119 [42 Cal. Rptr. 533]; *People* v. *Harby* (1942) 51 Cal.App.2d 759, 767 [125 P.2d 874].) "It is, however, difficult to conceive of an act constituting 'wilful or corrupt misconduct in office' which does not violate one of the long list of crimes of public officers (*supra*, § 872, 873)[3] or the many prohibitions in local ordinances." (2 Witkin, Cal. Crimes, § 874, p. 820.) Thus, there must be a violation or omission of a *proscribed act* committed *while in office.*

---

[3]Section 872 sets forth several affirmative acts covering the principal kinds of official misconduct which are made misdemeanors or felonies by express statute: (a) Unlawful exaction or acceptance of fee.
  (b)  Kickback of salary or fees.
  (c)  Unlawful interference with person or property.
  (d)  Unlawful private activities or conflict of interest.
  (e)  Compensation for appointment to office.
  (f)  Destruction or withholding of records.
  (g)  Wrongful disclosure of confidential information or secret proceedings.
  (h)  Other wrongful acts.
  Section 873 describes neglect of duty as nonfeasance, or willful neglect of duty by a public officer.

In view of the foregoing, we find the term "official misconduct" sufficiently specific to provide fair warning of that conduct which is prohibited. Additionally, by its very definition, there exists the requisite nexus between the act or omission and the position held.

Having determined that the term "official misconduct" is neither unconstitutionally vague nor uncertain, we must address the question of whether Mazzola is guilty of official misconduct. A view of the circumstances in the present action leads this court to the conclusion that Mazzola cannot be legally guilty of official misconduct. Quite clearly, official misconduct requires a direct relationship of the alleged wrongdoing to the office held. In addition, a specified statutory violation is normally the basis for charging an official with misconduct in office. (See Witkin, *supra*, § 872, pp. 816-819.) In the instant case, the charges against appellant had nothing to do with his official capacity as airports commissioner nor to the performance of his duties as such. Furthermore, Mazzola did not violate any statute that would give rise to a charge of official misconduct. Therefore, he cannot be charged with official misconduct.

In their closing argument to the board of supervisors, respondents argued that Mazzola violated section 1126 of the Government Code,[4] the state statute prohibiting conflict of interest by a local officer, and thus was guilty of official misconduct. Appellant contends that the city charter, as amended by the June 4, 1974, district primary election, has superseded section 1126 and that he may be removed only in accordance with the terms of the charter.

---

[4]Section 1126 of the Government Code provides: "(a) A local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his duties as a local agency officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is employed. Such officer or employee shall not perform any work, service or counsel for compensation outside of his local agency employment where any part of his efforts will be subject to approval by any other officer, employee, board or commission of his employing body, unless otherwise approved in the manner prescribed by subdivision (b).

"(b) Each appointing power may determine, subject to approval of the local agency, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees. An employee's outside employment, activity or enterprise may be prohibited if it: (1) involves the use for private gain or advantage of his local agency time, facilities, equipment and supplies; or the badge, uniform, prestige or influence of his local agency office or employment or, (2) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than his local agency for the

Article XI, section 5 of the California Constitution provides that "[c]ity charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws *inconsistent* therewith." (Italics added.) Thus, with regard to municipal affairs, a city charter will supersede a general state law where an inconsistency exists. (*Campen* v. *Greiner* (1971) 15 Cal.App. 3d 836, 840 [93 Cal.Rptr. 525].)

Appellant argues that Government Code section 1126 and San Francisco's charter provisions are inconsistent with one another by virtue of the fact that former subdivision (b) of section 8.105 of the San Francisco Charter,[5] employing nearly identical language to that used in section 1126 of the Government Code, was repealed on June 4, 1974, and the fact that subdivision (b) of section 8.105 was deleted is significant as showing legislative intent to change the existing law.

While it is true that where an amendment to a statute consists of a deletion of an express provision, the presumption is that a substantial change in the law was intended (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231 [273 P.2d 5]; *In re Mary D.* (1979) 95 Cal.App.3d 34, 37 [156 Cal.Rptr. 829]), where, as here, the legislation follows voter approval, the ballot summary, arguments and analysis presented to the electorate in connection with a particular measure is evidence of probable legislative intent. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr.

---

performance of an act which the officer or employee, if not performing such act, would be required or expected to render in the regular course or hours of his local agency employment or as a part of his duties as a local agency officer or employee or, (3) involves the performance of an act in other than his capacity as a local agency officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit or enforcement of any other officer or employee or the agency by which he is employed, or (4) involves such time demands as would render performance of his duties as a local agency officer or employee less efficient.

"The local agency may adopt rules governing the application of this section. Such rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee."

[5]Former subdivision (b) of section 8.105 provided: "No supervisor and no officer or employee of the city and county shall engage in any activity, employment or business or professional work or enterprise which is inconsistent, incompatible, or in conflict with his duties as a supervisor or officer or employee of the city and county or with the duties, functions and responsibilities of his appointing power, or the department, office or agency by which he is employed, or the board or commission of which he is a member."

239, 583 P.2d 1281]; *Carter* v. *Seaboard Finance Co.* (1949) 33 Cal.2d 564, 580-581 [203 P.2d 758].)

With reference to the San Francisco Charter, unopposed ballot arguments in favor of Proposition B of the San Francisco district primary election on June 4, 1974, provided, in pertinent part, that "Proposition 'B' *will supplement, but not duplicate, State law* to give greater assurance to the people that their local elected and appointed officials and employees will act in the interest of the public good rather than their own private gain." (Italics added.) The words which we have italicized are a clear and positive representation that the revised charter, if adopted, would be read in conjunction with existing state conflict of interest statutes. Thus, we find that the purpose in deleting subdivision (b) of section 8.105 of the San Francisco Charter was to avoid duplication with section 1126 of the Government Code rather than an attempt to supersede the statute.

We cannot agree, however, with respondents' application of section 1126 in the present case. It is true that the first sentence of this statute prohibits a local agency officer or employee from engaging in any employment which "is inconsistent, incompatible, in conflict with, or inimical to his duties as a local agency officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is employed." But this general "edict" does not stand alone. It is plainly limited in its application by the following two sentences of the statute: "Such officer or employee shall not perform any work. . .for compensation outside of his local agency employment where any part of his efforts will be subject to approval by any other officer, employee, board or commission of his employing body, *unless otherwise approved in the manner prescribed by subdivision (b).* [Italics added.]

"(b)    Each appointing power may determine, subject to approval of the local agency, those outside activities which. . .are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees."

Construing these sentences together, we think it follows that a public appointee's outside activity which is known to his appointing officer at the time of his appointment, and which is not determined at that time to be an activity in conflict with the appointee's duties as a public official is, by implication, an activity which is "otherwise approved" and not subject to the statute's proscriptive reach.

The final paragraph of section 1126 reads: "The local agency may adopt rules governing the application of this section. Such rules *shall include* provision for notice to employees of the determination of prohibited activities, of disciplinary activities, and for appeal by employees for such a determination and from its application to an employee." (Italics added.)

We think the intent of the Legislature is clear. Before a local agency applies this section in charging an employee with its violation, that agency must provide *notice* to the employee that a conflict of interest exists with respect to the employee's outside activities. Notice should also be provided to the employee with regard to the agency's intended disciplinary action, as well as provisions for appeal from the agency's determination. Where an agency has not provided for notice of proscribed activities, employees can only speculate whether or not a particular outside activity they are engaging in will be prohibited. Clearly, in the absence of any agency rules providing notice of proscribed activities, a public employee or official who decides to undertake an outside job might be subject at any time and without warning to being charged with a violation of section 1126.

We do not suggest that whenever an appointment to a public office is made with full knowledge of an appointee's outside employment, the appointing officer or public agency is thereafter estopped from ever bringing charges against the appointee based on a violation of section 1126. For example, where an official's outside or agency position has *changed*, a subsequent finding of a conflict of interest might be appropriate.

In such a case, however, it would contravene the intended application of the statute to allow an agency to file charges based on its redetermination of an employee's status without *first informing* the employee of such a change. By an agency's providing adequate notice of such a redetermination to the employee, as provided in the last paragraph of section 1126, the employee would have a chance to either appeal the agency's determination or resign from either his outside or agency position. However, without such notice, an employee would be forever subject to being charged outright with an 1126 violation, even after his outside activity had previously been *approved*.

In the instant case, Mazzola occupied the same position in his union from the time of his appointment as commissioner until the time of his

removal. The only change which occurred during this period with respect to Mazzola's outside position was that Mazzola's union went on strike against the city. This event did not necessarily change Mazzola's position. He was a business manager before and during the strike, and the possibility that his union would go on strike could hardly have been an unforeseeable event at the time of Mazzola's appointment or reappointment. Furthermore, Mazzola's appointment was not made on the condition that no conflict of interest would be charged so long as his union did not go out on strike.

If a determination was made by respondents that Mazzola's union activities during the strike had changed to the extent of creating a prohibited conflict of interest, it was respondents' obligation to so inform Mazzola of this determination before charging him with a violation of section 1126. The notice requirement implicit in the statute was blatantly ignored in the present case, since it was not until respondents' final argument before the board of supervisors that an 1126 violation was ever formally made a basis for Mazzola's alleged misconduct.

We conclude that having appointed Mazzola airports commissioner with full knowledge of his union position, respondents impliedly approved of Mazzola's dual status within the meaning of section 1126. Having acknowledged Mazzola's concurrent positions for several years, and without having properly notified Mazzola of any redetermination of his status, respondents are precluded from basing its charge of "official misconduct" against Mazzola upon a violation of section 1126.

Respondents also contend that appellant breached his fiduciary duty to the people of the City and County of San Francisco and thus his subsequent removal from office was in accordance with the law.

It is argued that as airports commissioner, appellant's office rendered him a trustee for the public. Respondents draw an analogy between the duties of airports commissioner and those of corporate directors entrusted with the management of a large business operation.

All of the cases cited by respondents deal with a situation where a corporation officer utilizes his fiduciary relationship to obtain a personal advantage to the detriment of a corporation. (For example; *Sequoia Vacuum Systems* v. *Stransky* (1964) 229 Cal.App.2d 281 [40 Cal.Rptr. 203] [officer entered into competing business]; *Pigeon Point Ranch* v.

*Perot* (1963) 59 Cal.2d 227 [28 Cal.Rptr. 865, 379 P.2d 321] [officer utilized corporate funds for personal advantage].) The cases state the general rule that directors are fiduciaries and must exercise their powers in good faith, and with a view to the interest of the corporation. Accordingly, they cannot obtain any *personal profit* from their activities and must account to the corporation if they do. (6 Witkin, Summary of Cal. Law (8th ed. 1974) p. 4378.)

Similarly, respondents' reliance on *Terry* v. *Bender* (1956) 143 Cal. App.2d 198 [300 P.2d 119] and *Coulter* v. *Pool* (1921) 187 Cal. 181 [201 P. 120] is misplaced. The *Terry* court held that the city mayor, by being bribed, was in conflict of interest with the city for using the power of his office for personal monetary gain. (143 Cal.App.2d at pp. 206-209.) *Coulter* involved an appeal from the denial of mandamus to compel payment from the County of Sonoma for labor performed by plaintiff on its county highways. (187 Cal. at p. 183.) The only issue there was the constitutionality of a statute found to be in conflict with another statute. (*Id.*, at pp. 184-185.) The court was forced to determine which of the two statutes applied to plaintiff's payment claim. Clearly these two cases relied upon by respondents have no application to the instant case.

We find the concept of fiduciary duty inapplicable to Mazzola's actions. Appellant never gained any monetary profit or advantage for his union by utilizing his position as airports commissioner.

Respondents further argue that if appellant wanted to aid his union in its struggle, he had only to remove himself from the position of trust he occupied with the union's temporary adversary—the City and County of San Francisco. It is respondents' contention that Mazzola's failure to do so resulted in a breach of trust. We disagree.

Mazzola was appointed to the Airports Commission for the first time in 1970 and was reappointed in 1974. On each occasion it was well known to both the mayor and the board of supervisors of San Francisco that Mazzola was and would continue to be a union official.

To accept respondents' theory would be tantamount to stating that union officials may serve as city officials only so long as they do not discharge their duties to their local unions.

A thorough review of the record indicates that at no time did appellant take advantage of his status as airports commissioner in violation of the trust placed in him as a city official.

In view of the foregoing, this court finds no legal basis for a finding of official misconduct.

Judgment is reversed.

Taylor, P. J., and Smith, J., concurred.

A petition for a rehearing was denied December 17, 1980, and respondents' petition for a hearing by the Supreme Court was denied January 21, 1981. Richardson, J., was of the opinion that the petition should be granted.