[Civ. No. 49594. First Dist., Div. One. Sept. 30, 1981.]

WILLIE GRAHAM, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE NORTH SOLANO
JUDICIAL DISTRICT OF SOLANO COUNTY, Defendant and
Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney

General, W. Eric Collins and Frances Marie Dogan, Deputy Attorneys General, for Real Party in Interest and Appellant.

Michael D. Bradbury, District Attorney (Ventura), Raymond J. Sinetar, Assistant District Attorney, and Ken W. Riley, Deputy District Attorney, as Amici Curiae on behalf of Real Party in Interest and Appellant.

Thomas L. Gill, Favaro, Lavezzo & Gill and Osby Davis for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

---

OPINION

**NEWSOM, J.**—The present appeal, by the People, is from an order granting a peremptory writ of mandate, commanding the municipal court to set aside its previous order and permit Attorney Osby Davis to represent respondent, Willie Graham, who was charged with violating Penal Code section 273d (infliction of cruel bodily punishment on a child).

Following his retention by Graham, Davis was appointed to the Solano County Board of Supervisors; shortly thereafter, just prior to the Graham trial, the People moved to disqualify Davis on grounds of conflict of interest. The municipal court granted the motion; the superior court, on Graham's petition, granted mandamus, in effect reversing the municipal court, and the People's appeal followed.

At the outset, we recognize that, given the close official relationship, fiscally and otherwise, which obtains between county boards and district attorneys, it is plainly undesirable for a supervisor to oppose the local district attorney in a criminal case. We acknowledge, too, that while a criminal defendant has in general the right to be represented by counsel of his choice (see *People v. Crovedi* (1966) 65 Cal.2d 199, 206 [53 Cal.Rptr. 284, 417 P.2d 868]; *People v. Reaves* (1974) 42 Cal. App.3d 852, 855 [117 Cal.Rptr. 163]), that right is not absolute (*Yorn v. Superior Court* (1979) 90 Cal.App.3d 669, 674 [153 Cal.Rptr. 295]) and it must yield on occasion to other, greater interests.

The People, and amicus district attorney's association, argue that this is one of those limited instances. They cite, inter alia, *People v. Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363], where our Supreme Court announced as a judicially declared rule of criminal procedure, that "a city attorney with prosecutorial responsibilities may not defend ... persons accused of crime." (*Id.,* at pp. 186-187; and see *People v. Municipal Court (Wolfe)* (1977) 69 Cal.App.3d 714, 719 [138 Cal.Rptr. 235].) They cite as well in support of the contention that at least the "appearance of impropriety" forbidden by *People v. Rhodes, supra,* 12 Cal.3d 180, exists in the case at bench, those provisions of Government Code sections 25300, 25303 and 25203, which give the Solano board certain authority and control over the district attorney, mostly of a limited fiscal nature.[1] And, finally, it is argued that Davis' representation of Graham violates the prohibition against "incompatible offices" found in Government Code section 1126, subdivision (a).[2]

---

[1]Government Code section 25303 provides: "The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds. It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection. [¶] This section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county. [¶] Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff."

Government Code section 25203 provides: "The board shall direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party; by a two-thirds vote of all the members, the board may employ counsel to assist the district attorney, county counsel, or other counsel for the county or entity in the conduct of such actions; provided, however, that the board may authorize county officials, who are not attorneys, to initiate and conduct litigation in small claims court on behalf of the county."

Section 25300 provides: "The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees. Except as otherwise required by section 1 or 4 of article XI of the California Constitution, such action may be taken by resolution of the board of supervisors as well as by ordinance."

[2]Section 1126, subdivision (a), provides: "(a) A local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his duties as a local agency officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is emloyed. Such officer or employee shall not perform any work, service or counsel for compensation outside of his local agency

One factor in the instant case distinguishes it from *Rhodes, supra,* 12 Cal.3d 180, *People* v. *Municipal Court (Wolfe), supra,* 69 Cal.App.3d 714, and other cited authority. ■ A county district attorney prosecuting a criminal action within a county, acts as a *state* officer, exercising ultimately powers which may not be abridged by a county board of supervisors. (*Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 653, 657 [83 Cal.Rptr. 41]; *In re Brindle* (1979) 91 Cal.App.3d 660, 674 [154 Cal.Rptr. 563].)

Accordingly, any conflict in Davis' representation of Graham is abstract rather than actual. We are of course aware that instances of attempts by county boards to control criminal prosecutions are not uncommon, even though they have met with little ultimate success. Thus, it has been held that a county board may not order that a private law firm be employed as assistant counsel with the district attorney in the prosecution of a criminal case. (*County of Modoc* v. *Spencer* (1894) 103 Cal. 498, 501 [37 P. 483]; see also *Gibson* v. *County of Sacramento* (1918) 37 Cal.App. 523, 531 [174 P. 935]; *Conklin* v. *Woody* (1917) 33 Cal.App. 554, 556 [165 P. 973].) Nor, it has been held, has a county board the authority to transfer control of investigatory personnel from the district attorney to the county sheriff. (*Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 241-242 [138 Cal.Rptr. 101].) ■ Indeed, as said in *Hicks, supra,* a county board has *no* inherent powers, since it is a mere creature of the state, but "can exercise only those powers expressly granted it by Constitution or statutes and those necessarily implied therefrom. (Cal. Const., art. XI, § 1; *People* v. *Langdon,* 54 Cal.App.3d 384, 388-389 . . .; *Byers* v. *Board of Supervisors,* 262 Cal.App.3d 148, 155 . . . .)" (*Id.* at p. 242.)

Seen in this context, therefore, the relationship between Davis and Graham presents neither actual nor potential conflict of interest. Nevertheless, we acknowledge the validity of appellant's contention that, even in the absence of real or apparent conflict, the relationship of Davis and Graham may raise issues of public confidence in the integrity of the criminal justice system. It is a political fact, and one well known to the public, that a positive relationship between a county board and the district attorney's office can be critical to the proper functioning of the prosecutor's office—as, for example, where discretionary allocation of

---

employment where any part of his efforts will be subject to approval by any other officer, employee, board or commission of his employing body, unless otherwise approved in the manner prescribed by subdivision (b)."

public funds is involved. Also, from the prosecutor's standpoint it is both awkward and unfair that he should be regularly pitted against an adversary who has the power, if not the right, to exact financial retribution against his office.

■ For these reasons we agree with appellant, and with the Attorney General, that unless *compelling* reasons to the contrary are advanced, the common law, statutes and practical sense alike argue against permitting a county supervisor who is an attorney to represent criminal defendants in cases prosecuted by the county district attorney. (62 Ops.Cal.Atty.Gen. 512 (1979); Gov. Code, § 1126, subd. (a); *People* v. *Carlucci* (1979) 23 Cal.3d 249, 258 [152 Cal.Rptr. 439, 590 P.2d 15]; *People* v. *Rhodes, supra*, 12 Cal.3d 180, 185.)

We conclude, however, that the case at bench presents such compelling reasons. Not only was Mr. Davis retained rather than appointed, he was retained before his accession to the board, and the relationship which had developed up until then was a close one, based upon four months' duration. And finally, a key factor influencing our decision is that Mr. Davis' representation of Graham while on the county board appears to be an isolated incident rather than a persistent practice. (*Sparks* v. *Superior Court* (1975) 45 Cal.App.3d 533, 537 [119 Cal. Rptr. 441].) Only if he were consistently representing criminal defendants within the county would Davis in our view be required to decide, as a matter of both public policy and professional ethics, whether to eschew such representation or resign from the board.

The order is affirmed.

Racanelli, P. J., and Grodin, J., concurred.