TO BE PUBLISHED IN THE OFFICIAL REPORTS


OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General


---------------------------------------------------------------
                                 :
        OPINION                  :         No. 86-1006
                                 :
          of                     :         JUNE 24, 1987
                                 :
   JOHN K. VAN DE KAMP           :
     Attorney General            :
                                 :
     CLAYTON P. ROCHE            :
   Deputy Attorney General       :
---------------------------------------------------------------


        THE HONORABLE BILL LOCKYER, MEMBER OF THE CALIFORNIA
STATE SENATE, has requested an opinion on the following question:

        Is it a violation of section 1126 of the Government
Code for a school board member to own and operate for profit a
preschool facility and a K-3 school where (1) the preschool
facility is located within the member's school district and acts
as a "feeder" school for his K-3 school and where (2) although
the K-3 school is not located within the member's district, it
draws pupils from his district?

                          CONCLUSION

        It is a violation of section 1126 of the Government
Code for a school board member to own and operate for profit a
preschool facility and a K-3 school under the circumstances
described above.
                          ANALYSIS

        1.  The Factual Background

        In 1985 an individual was elected to the governing
board of a unified school district.[1]  At the time he was
elected, and presently, he owned and operated and owns and
operates two private schools for profit.  One is a preschool
facility which is located within the member's school district.
The other is a K-3 school which is not within the boundaries of

_____

     1.  Unified school districts operate classes "at least in
grades 1 through 12."  (Ed. Code, sec. 37022.)

the member's school district, but is located slightly less than two miles from the nearest elementary school operated by the district.

The preschool facility has approximately 60 pupils. Tuition is $50.00 per week with additional charges being made for extended day services (morning, early afternoon and late afternoon). The preschool acts as a "feeder" school for the member's private K-3 school. A large majority of the K-3 school pupils are former pupils of the preschool.

Although the K-3 school is not located within the member's school district, both schools draw pupils from the surrounding territory, including the member's district. The K-3 school has approximately 90 pupils. Tuition and extended day charges are the same as for the preschool.

We are asked whether the ownership and operation of these two schools for profit by the school board member constitutes a violation of section 1126 of the Government Code. We conclude that it does.

2.   The Statutory Background-Section 1126

Section 1126 of the Government Code is the main operative provision in a series of sections generally governing inconsistent and incompatible outside activities of local agency officers and employees. These provisions, first enacted in 1971 (Stats. 1971, ch. 633), are presently found in sections 1125 through 1128 of the Government Code. Section 1125 contains the definition of "local agency" for purposes of the provisions. Section 1126, as noted, is the main operative provision. Section 1127 sets forth certain exceptions with respect to the outside employment of policemen and firemen, not germane herein, and section 1128 sets forth an exception for publicly employed attorneys, also not germane herein.

For purposes of section 1126, a school district is a "local agency". Section 1125 provides:

> "'Local agency,' as used in this article, means a county, city, city and county, political subdivision, district, or municipal corporation."

This all encompassing definition clearly includes a school district. (See 56 Ops.Cal.Atty.Gen. 556 (1973); 58 Ops.Cal.

Atty.Gen. 110, 112-114 (1975).)[2/]

Section 1126 is set forth in two subdivisions. Subdivision (a) thereof contains the general proscription that

"...a local agency officer or employee shall not engage in any employment, activity or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed...."[3/]

Subdivision (b) then provides that each appointing power may determine which outside activities of local agency employees are to be considered "inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees." Criteria are set forth for making that determination. Subdivision (b) also provides that the local agency may adopt rules regarding section 1126, which shall include notice of proscribed activities, proposed disciplinary

---

2. Furthermore, as will be discussed post, section 35233 of the Education Code, enacted in 1985 (Stats. 1985, ch. 816), specifically makes section 1126 applicable to members of governing boards of school districts.

3. Subdivision(a) of section 1126 provides in full:

"(a) Except as provided in Section 1128, a local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed. Such officer or employee shall not perform any work, service, or counsel for compensation outside of his or her local agency employment where any part of his or her efforts will be subject to approval by any other officer, employee, board, or commission of his or her employing body, unless otherwise approved in the manner prescribed by subdivisions (b).

action to be taken, and employee appeals.[4]

---

4.  Subdivision (b) of section 1126 provides in full:

"(b) Each appointing power may determine subject to approval of the local agency, and consistent with the provisions of Section 1128 where applicable, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees.  An employee's outside employment, activity, or enterprise may be prohibited if it:  (1) involves the use for private gain or advantage of his or her local agency time, facilities, equipment and supplies; or the badge, uniform, prestige, or influence of his or her local agency office or employment or, (2) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than his or her local agency for the performance of an act which the officer of employee, if not performing such act, would be required or expected to render in the regular course or hours of his or her local agency employment or as a part of his or her duties as a local agency officer or employee or, (3) involves the performance of an act in other than his or her capacity as a local agency officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit, or enforcement of any other officer or employee or the agency by which he or she is employed, or (4) involves such time demands as would render performance of his or her duties as a local agency officer or employee less efficient.

"The local agency may adopt rules governing the application of this section.  Such rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee."

We note that subdivision (a)'s proscriptions include activities which are "inimical" to the officer's or

In the decade and a half that section 1126 has been in operation, this office has written numerous formal and informal opinions both interpreting and applying the section.

We noted early that although section 1126 was intended primarily to apply to the activities of subordinate officers and employees, it was by its terms broad enough to encompass the governing body of the local agency itself. (See, e.g., 58 Ops. Cal.Atty.Gen. 109, 113 (1975); 57 Ops.Cal.Atty.Gen. 252, 260, note 5 (1974).) We further noted early that the subdivision (a) proscription was couched in mandatory terms ("shall not") whereas subdivision (b) was couched in permissive terms ("may") with respect to the determination to be made concerning proscribed activities. From this we concluded that the provisions of subdivision (a) were self-executing, with incompatibility determinations or statements being discretionary. (See 58 Ops. Cal.Atty.Gen. 109, 113 (1975); Cal. Atty. Gen., Indexed Letter No. I.L. 74-227 (Dec. 23, 1974).)[5/] Accordingly, as interpreted by this office, an elected school board member could have been considered to have violated section 1126 under subdivision (a) despite the fact that there was no precise determination anywhere as to what activities were prohibited. Indeed, on numerous occasions, we opined on whether or not a particular officer or employee, including elected officials, violated this section despite the absence of an incompatibility statement or determination of incompatible activities. (See, e.g., 62 Ops. Cal. Atty. Gen. 512 (1979), county supervisor-attorney could not represent criminal defendants on cases presented by his own

---

employee's duties, or the duties and functions of his or her appointing power or local agency.

Interestingly, subdivision (b) does not include the term "inimical" in its description of proscribed activities. Nor does it provide for the determination of activities which are inconsistent with, incompatible to, or in conflict with the duties, functions or responsibilities of his or her appointing power or local agency as opposed to the officer or employee's duties themselves.

5. The logic in this conclusion is put into relief when one considers that section 1126 was clearly patterned upon then section 19251 of the Government Code, applicable to state employees, which in its first paragraph proscribed incompatible activities and then mandated ("shall") each appointing power to determine those activities deemed to be incompatible for its employees. (See Stats. 1949, ch. 474. See now, Gov. Code, sec. 19990. See also discussion in 64 Ops.Cal.Atty.Gen. 795, 798 (1981).)

86-1006

5

district attorney; Cal. Atty. Gen., Indexed Letter No. I.L. 74-227 (Dec. 23, 1974), city councilman could not be firefighter in his own city.)

Our above described approach to section 1126 was, however, modified in 64 Ops.Cal.Atty.Gen. 795 (1981) based upon the decision of the Court of Appeal in Mazzola v. City and County of San Francisco (1980) 112 Cal.App.3d 141, hearing denied 1/21/81.  That case rejected the "self-executing" approach to section 1126 and concluded that the appointed officer involved therein could not be deemed to have violated section 1126 unless he had notice of the proscribed activities and notice of the intended disciplinary action to be taken and appeals procedures therefrom.

We accordingly concluded in 64 Ops.Cal.Atty.Gen. 795 (1981), supra, based upon Mazzola that section 1126 could not be applicable to an elected governing board member.  We stated:

> "Clearly, the court's approach to and interpretation of section 1126 set forth above is inconsistent with the prior approach taken by this office.  Since elective officials have no appointing power other than the electorate, no notice can be given to them of proscribed activities, of intended disciplinary action or of appeals procedures from such disciplinary action.  Additionally, no disciplinary action would be applicable to the governing board itself as might be provided by section 3060 for removal from office by accusation by the grand jury or by recall by the electorate."  (Id. at p. 800.)

However, at least as to school board members, this conclusion was to be short-lived.  By Statutes of 1985, chapter 816, the Legislature enacted, inter alia, section 35233 of the Education Code.  That section provides:

> "The prohibitions contained in Article 4 (commencing with Section 1090) and Article 4.7 (commencing with Section 1125) of Division 4 of Title l of the Government Code are applicable to members of governing boards of school districts."[6]

---

6.  Statutes of 1985, chapter 816 repealed the special conflict of interest provisions contained in the Education Code which were applicable to school board members.  As to some of the problems created by the switchover of school board members from

Thus, at the present time, section 1126 is clearly applicable to school board members.

Before we reach an analysis as to whether the school board member at issue herein who owns and operates private schools for profit is in violation of section 1126, one more point with respect to the interpretation of 1126 requires discussion.

Initially, this office analogized section 1126 to the common law doctrine prohibiting the holding of incompatible offices. (See, e.g., 68 Ops.Cal.Atty.Gen. 7 (1985) for a discussion of this doctrine.) If offices are incompatible the same individual may not simultaneously hold both positions. Only one significant clash of duties _and loyalties_, actual _or potential_, is necessary to make offices incompatible. Abstention from action is not permitted as a means of avoiding the doctrine. Accordingly, in our earlier opinions, we concluded that whenever a violation of section 1126 was found, the officer or employee should resign one of the positions. However, in 59 Ops.Cal. Atty.Gen. 604, 612-613 (1976) we modified our approach, reasoning as follows:

> "Upon further reflection on section 1125 _et seq_, when considered in relation to Proposition 9 and section 1090 _et seq_. concerning contractual conflicts of interest, it is the view of this office that our prior approach requires modification. It is the current belief of this office that the analogy between section 1125 _et seq_. of the Government Code and the common law doctrine concerning incompatible offices cannot be fully applied so as to require resignation where incompatibility may inhere in some of the functions of the two positions. This is brought into relief when one considers that the PRA prohibits conflicts on a _transactional_ _basis_, and hence abstention is _permitted_ as well as required. Additionally, section 1090 _et seq_. permit abstention on a transactional basis where the conflict is defined statutorily as a 'remote interest.' See §1091. Were a strict application of the doctrine concerning incompatibility of

those proscriptions to the proscription of section 1090 et seq. of the Government Code (relating to contractual conflicts of interest) see 69 Ops.Cal.Atty.Gen. 255 (1986) and 69 Ops.Cal.Atty.Gen. 102 (1986).

86-1006

offices to be applied by analogy to an incompatibility found under section 1125 as to private employment or other private activities, the anomalous situation could arise where the PRA would permit abstention, section 1090 *et seq.* would permit abstention, and the general and somewhat obscure provisions of section 1125 *et seq.* would require resignation from one of the conflicting employments or activities. Such a result would render the operation of the PRA and section 1090 *et seq.* meaningless in many cases.  Such a result is to be avoided.

"It is therefore concluded that section 1125 *et seq.* do not require a resignation of one office or employment if an incompatibility is found within the meaning of section 1126, but that abstention will be permitted on a transactional basis.  The more specific provisions of the PRA and section 1090 *et seq.* should control over the more general provisions of 1125 insofar as they are covered by the former sections. <u>We do not mean to hold, however, that if the incompatibility is of such a continuing and pervasive nature that a public officer or employee may constantly abstain from performing his duties because of personal conflict.  In such a situation, resignation from the public office or employment or cessation of the conflicting private activity would appear to be required.</u>  Prior informal opinions of this office, to wit, I.L. 76-95 and I.L. 74-227 are hereby disapproved insofar as their reasoning is contrary to the reasoning set forth above."  (Final emphasis added:  Footnotes omitted.)

And more recently, we applied this approach to section 1126 in 63 Ops.Cal.Atty.Gen. 916, 922-923 (1980) as follows involving a county supervisor who was also a consultant to a county air basin which included his county:

"The supervisor in question has already agreed that he will abstain from participation in any matter coming before the board of supervisors with respect to air pollution control matters. However, as noted, section 1126 does not permit a local agency officer to abdicate his responsibilities to

that agency in favor of his outside activities.  The agreement to abstain from participation in all air pollution matters which would come before the board of supervisors would amount to just that, an abdication of his duties to the district, <u>an entity</u> <u>separate</u> <u>from</u> <u>the</u> <u>county</u>.  Whether such abstention would in fact be required as to all or a major portion of those duties we cannot say.  This would require an analysis of the duties actually assigned to the individual pursuant to the air basin contract contrasted with his duties as a district board member.  However, his agreement to abstain would indicate to us that there would be tremendous difficulty in attempting to walk a 'fine line' and perform the duties of both positions.  <u>Permitted abstention under</u> <u>section 1126 is the exception, not the rule.</u>"  (Final emphasis is added.)

And we finally concluded:

"In summary, we conclude that there is no statute or common law doctrine which would absolutely prohibit the county supervisor from entering into the subject consulting contract with the Mountain Counties Air Basin.  However, sections 1126, 87100 and the common law doctrine on conflicts of interest could still apply on a transactional basis.  Whether there would be no such conflicts, or few or many would depend upon the actual duties assigned to him under the contract considered in relation to both his personal interests and his duties to the county air pollution control district.  Under section 1126 the supervisor may not abdicate the duties he owes to the district.  If abstention at the county air pollution control district level would be required in all or a major portion of the matters coming before the supervisors as district board, the consulting contract would be incompatible with the supervisor's duties owed to that 'local agency.'"

Accordingly, the office's approach to section 1126 has been that there is essentially a continuum as to violations of section 1126 which can range from continuous and all pervasive to

86-1006

9

a mere isolated transaction.  To determine where a particular officer or employer falls with regard to section 1126 on such continuum, one must refer to the duties and responsibilities of his public position or his public agency and the actual or potential conflict or harm which can arise from his outside activities and his or her attempt to perform the functions of both the public and the private positions or activities.  And, as noted by us in the above quoted opinion, "[p]ermitted abstention under section 1126 is the exception, not the rule." (See also Graham v. Municipal Court (1981) 123 Cal.App.3d 1018, 1023, discussed post.)

### 3. Application of Section 1126

We now examine the question as to whether the school board member at issue herein here who owns the preschool and K-3 school may be said to be in violation of section 1126.  To decide this question we examine the duties and functions of the school board, which board controls the school district.  (Ed. Code, sec. 35010.)

It is suggested on behalf of the school board member involved herein that there have been no conflicts which have arisen which would have required his abstention, and that when they do occur, he will appropriately abstain from board participation.  On the other side of the coin, at least several instances have been cited to us where certain school district matters have directly clashed with the board member's private school interests.

Although many of the duties and functions of a school board are specifically set forth in the Education Code, it is well to initially note that since January 1, 1976 the governing boards of all school districts

> "...may initiate and carry on any program, activity, or otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established." (Ed. Code, sec 35160).

Accordingly, within the limitation of section 35160, the matters which might come before and be considered by a school board are limitless.

However, when one considers the statutory powers and duties set forth in the Education Code with reference to the school board member at issue herein, it is difficult to see how the board member may legitimately serve on the board and at the

same time run private schools for profit which essentially compete for students with the district's own elementary schools.

In our opinion, any matter which might come before the school board which would improve the school system generally, or the elementary school system particularly, if adopted and implemented, could be deleterious to the board member's private schools and their success. We can virtually take official notice of the fact that the better a public school system is, the less likely parents are to send their children to private schools. The matters which could influence such a decision could reach not only the educational attributes of the schools, but also other activities and amenities such as sports or even the provision of day care at the school for working parents.

We examine some of a board's statutory powers. A school board may establish day care programs. (Ed. Code, sec. 8460 et seq.) A school board may establish preschool programs. (Ed. Code, sec. 37042; see also 61 Ops.Cal Atty.Gen. 520 (1978).) It may also provide a summer school program or even a year round school program. (Ed. Code, secs. 37250, 37420, 37500, 37610.) It also may establish a school cafeteria. (Ed. Code, sec. 39871.)

A school board is required to purchase and improve school lands and select school sites. (Ed. Code, sec. 39001 et seq.) A school board is also required to build and maintain school buildings. (Ed. Code, secs. 39110 et seq., 39170.)

A school board is required to prepare a "course of study" for schools under its jurisdiction. (Ed. Code, secs. 51053-51054.) In addition to required courses, a school board may prescribe such additional courses of study as if deems fit for its pupils. (Ed. Code, sec. 51201.) It also is required to evaluate and revise its district's educational programs, including activities both in and outside of class. (Ed. Code, sec. 51041.) It also may institute special programs such as the gifted student program (Ed. Code, sec 52200 et seq.), a math improvement program (Ed. Code, sec. 54300) or instruction in special subjects such as aviation (Ed. Code, sec. 51791) or consumer economics (Ed. Code, sec. 51830.) A school board may also establish "alternative schools" for nontraditional education. (Ed. Code, sec. 58500 et seq.)

A school board determines textbooks and other school materials to be used in its district (Ed. Code, sec 60040 et seq.; sec 60260 et seq.). Although the materials are generally required to be from state approval lists (See Ed. Code, sec. 60200), a school board is empowered to request state approval to obtain and use its own educational materials. (Ed. Code, sec. 60200, subdiv.(c).)

86-1006

11

A school board may also become involved in school district reorganizations, which could affect its district's boundary lines, and accordingly the area the district will serve and from which it will draw its pupils. (Ed. Code, sec. 35500 et seq.) "Reorganization" could include such matters as the annexation or transfer of all or part of the territory of a district to another district, or even whether to dissolve a unified school district, such as is involved herein. (Ed. Code, sec. 35511.)

In addition to its normal budgetary problems and decisions (which would include the number of teachers to be retained and hired, as well as other staff) a school board may make other financial decisions, such as whether to apply to the state for funds to carry out various school projects. (See, e.g., Ed. Code, sec. 17899.1 with respect to the California School Finance Authority Fund.)

In our view, a board member who runs private schools for profit which essentially are in competition with a public school or schools under his board's jurisdiction is engaged in an activity for compensation which is inconsistent, incompatible and in conflict with his duties as a school board member, not only on a possible transactional basis but on a continuing and pervasive basis. One need only examine the above chronicled statutory duties and functions of school boards, which are not exhaustive, to conclude that an individual, no matter how well intentioned, could not engage in the decision making process with reference to these duties and functions without some personal bias or interest. The success or failure of the public schools could have a real effect upon the success or failure of his private schools.

Additionally, as noted at the outset, section 1126 not only proscribes outside activities for compensation which are inconsistent with, incompatible to or in conflict with a local agency officer's or employee's public duties, but also proscribes outside activities which are "inimical" not only to his or her duties, but also to "the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed."

Although the terms "incompatible", "inconsistent" and "in conflict with" are more or less synonymous, at least in common parlance, (see Webster's New International Dictionary, 3d Ed. 1961, pp. 477, 1144), the term "inimical" has a somewhat different connotation. Thus, the same dictionary defines inimical (at page 1163) as follows:

> "Inimical 1...a: having the disposition or temper of an enemy: viewing with disfavor: HOSTILE... b: reflecting or indicating

86-1006

12

hostility:  UNFRIENDLY... 2.  prejudicial in tendency, influence, or effects:  HARMFUL, ADVERSE... syn see ADVERSE."

In our opinion, the operation of the private preschool and K-3 school by the board member at issue herein, where the preschool acts as a "feeder" school for his K-3 school, and both schools draw students from his school district, is inimical to the duties, functions and responsibilities of his school district.  Every student who attends his K-3 school is a student for whom the district will receive no "ADA".  In short, his K-3 school is siphoning funds off of his own school district.  Certainly such is "prejudicial in tendency, influence, or effects" and is both harmful and adverse to his district.  And with respect to this facet of section 1126, there is no question that such is a continuous "conflict" so long as the private K-3 school exists and draws pupils from the school district.  As to this facet of section 1126, we need not worry about nor speculate upon whether conflicts are pervasive or merely arise on an occasional transactional basis.

Furthermore, we believe it is inimical to the school district to have a board member on the board who is essentially in competition with the district.  This is so when one considers the variety of matters which may be brought before the district board for its consideration.  Such matters would, of course, be initiated by motion of a single board member.  No matter how well intentioned the particular board member at issue herein may be, can it be said that the board member will initiate programs or other matters himself where they might act to his disadvantage?  We believe the district is entitled to board members whose priority interests are the best interests of their district.  Returning to the definition again of "inimical", such a situation certainly has the potential for "prejudice in tendency, influence, or effects" and could be both harmful and adverse to the district's best interests.

And finally, in the same vein, we believe it to be inimical to the functions, duties and responsibilities of the school district to have on its board an individual who is privy to all school district matters by virtue of his public office, including personnel and other closed hearing matters, which he can then use to his benefit in making his decisions with respect to his private schools.

Accordingly, we conclude that under the circumstances at issue herein, the school board member who owns the two private schools is pervasively and continually in violation of the proscriptions of section 1126 of the Government Code.

86-1006

13

## 4. The Question of Sanctions

Under the decision of Mazzola v. City and County of San Francisco, supra, 112 Cal.App.3d 141, the question of sanctions for violations of section 1126 is clear as to subordinate appointive officers and employees. The appointing authority must first apprise the officer or employee of the proscribed activities, and the agency must adopt rules and regulations as to the operation of the section, including intended disciplinary action and appeals therefrom. In short, the sanctions for violation of the section is disciplinary action.

Such a procedure, however, as prescribed by the final paragraph of section 1126, would not apply to an elected school board member. As noted in our post-Mazzola opinion, 64 Ops.Cal. Atty.Gen. 795, 800 (1981), discussed ante:

> "...elective officials have no appointing power other than the electorate, no notice can be given to them of proscribed activities, of intended disciplinary action or of appeals procedures from such disciplinary action. ..."

Under such circumstances, we believe that the appropriate action would be that suggested by us in earlier opinions of this office where we had considered section 1126 to have been entirely self-executing, and where no regulations regarding proscribed activities had been adopted by the agency involved. Our approach was that the incompatibility should be cured by the cessation of either the public office or public employment or the outside incompatible activity. (See e.g. 59 Ops.Cal.Atty.Gen. 604, 612, (1976), supra.) Such would seem to be the appropriate course of action herein.

This is the approach also suggested by the court in Graham v. Municipal Court, supra, 123 Cal.App.3d 1018. In that case it was contended that a county supervisor who was representing a criminal defendant in his own county was in violation of section 1126, subdivision (a). The court found there were compelling reasons for the representation, and hence it was permissible in that instance. The court then stated:

> "... And finally, a key factor influencing our decision is that Mr. Davis' representation of Graham while on the county board appears to be an isolated incident rather than a persistent practice. Sparks v. Superior Court (1975) 45 Cal.App.3d 533, 537 [119 Cal. Rptr. 441].) Only if he were

consistently representing criminal defendants within the county would Davis in our view be required to decide, as a matter of both public policy and professional ethics, whether to eschew such representation or resign from the board."  (Id. at p. 1023.)

We do note, however, that section 1126 itself provides no mechanism to force a school board member voluntarily to cure an existing, pervasive incompatibility or conflict.  Absent voluntary action by a board member who is in violation of section 1126, the sanctions available would be removal from office pursuant to section 3060 et seq. of the Government Code [7], or recall by the electorate.

\*   \*   \*   \*

---

7.   Section 3060 of the Government Code provides:
   "An accusation in writing against any officer of a district, county, or city, including any member of the governing board or personnel commission of a school district or any humane officer, for willful or corrupt misconduct in office, may be presented by the grand jury of the county for or in which the officer accused is elected or appointed.  An accusation may not be presented without the concurrence of at least 12 grand jurors."