[Civ. No. 35541. First Dist., Div. Two. Sept. 25, 1975.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al.,
Plaintiffs and Respondents, v.
FOOTHILL COMMUNITY COLLEGE DISTRICT OF
SANTA CLARA COUNTY, Defendant and Appellant.

152

---

**COUNSEL**

William M. Siegel, County Counsel, and Donald J. Fallon, Deputy County Counsel, for Defendant and Appellant.

Richard H. Perry for Plaintiffs and Respondents.

OPINION

**TAYLOR, P. J.**—Foothill Community College District on behalf of its governing board (hereafter "district") appeals from a judgment granting the petition for a writ of mandate to reinstate Ruth M. Durst, a member of the California School Employees Association (hereafter collectively "Durst"). The district contends that the court below erred in concluding that certain language in the district's handbook was unconstitutionally vague and uncertain, and that Durst had acted in exercise of her First Amendment free speech rights. We have concluded that the judgment must be affirmed.

The court found[1] the pertinent facts as follows:

Durst, a permanent classified employee of the district, on May 18, 1973, was served with a letter notifying her that a recommendation for dismissal was being presented for "conduct unbecoming an employee in public service" as said cause for disciplinary action is set forth in paragraph V.C.1. (b)(8) in the district's "Classified Staff Handbook." She properly requested a hearing on the charges for dismissal against her. On May 23, 1973, by a vote of three-two, the district dismissed Durst.

The only basis for the above disciplinary action was that she "unethically and without authorization distributed to other district employees xeroxed copies of Dr. Roland K. Chase's disciplinary letter[2] to Mr. Joel Godfus [sic], which letter was intended for Mr. Goldfus' permanent personnel file and to which . . . [she was] an information addressee and, moreover that . . . [she] distributed this letter with the intent of undermining and damaging the position of . . . [her] supervisor, Mr. Goldfus."

Pursuant to the stated cause for disciplinary action, "conduct unbecoming an employee in public service," the district was called upon to decide what was or was not conduct unbecoming an employee in public service without any legal standards or guidelines upon which to make such a decision.

---

[1]The instant case was decided on April 26, 1974, about a month after *Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]. However, as the issues were determined as a matter of law, the same does not need to be remanded for the lower court's independent review of the evidence. Nor do we need to consider the district's contention that the court erred in failing to make specific findings.

[2]The letter severely reprimanded Goldfus for his rude and abusive conduct toward Durst in the presence of a guest in the office.

Durst received a copy of the letter to Goldfus without request and without any notice that she was to consider it as a confidential information. The distribution of a copy of a letter of reprimand addressed to her supervisor with whatever intent by Durst was a proper exercise of her constitutional rights. No compelling public interest in restraining Durst's exercise of her constitutional rights appears. The district acted in excess of its jurisdiction in the premises, and its action further constituted an abuse of discretion.

The court then concluded that the cause for disciplinary action set forth in paragraph V.C.1.(b)(8) in the district's "Classified Staff Handbook" was unconstitutionally vague and uncertain, that Durst's conduct, regardless of intent, was protected by the First Amendment to the Constitution of the United States, and that the district had abused its discretion and that Durst was entitled to reinstatement to her permanent classified position.

The district first argues that the standard "conduct unbecoming an employee in public service," as set forth in its handbook, is not unconstitutionally vague if there is a proper relationship between the particular misconduct and the duties of the employee. The district cited authorities such as *Board of Education* v. *Swan,* 41 Cal.2d 546 [261 P.2d 261], *Gee* v. *State Personnel Bd.,* 5 Cal.App.3d 713 [85 Cal.Rptr. 762], *Orlandi* v. *State Personnel Bd.,* 263 Cal.App.2d 32 [69 Cal.Rptr. 177], and *Rudolph* v. *Athletic Commission,* 177 Cal.App.2d 1 [1 Cal.Rptr. 898].

The applicable standard was recently set forth by our Supreme Court in *Morrison* v. *State Board of Education,* 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]. As this court (Division Four) indicated in *Perea* v. *Fales,* 39 Cal.App.3d 939, 942 [114 Cal.Rptr. 808], the test established by Morrison requires two determinations: (1) whether the regulation is sufficiently specific to provide fair warning of which conduct is prohibited and which permitted; and (2) whether there exists a relationship or nexus between the prohibited conduct and the employee's fitness to perform the duties required by the position.

■ We turn first to the question of whether the charge "conduct unbecoming an employee in public service" fails on its face to provide a standard. The district argues that here, as in *Perea,* and other authorities cited, the required certainty may be provided by the common knowledge of members of the particular vocation when the regulation does not itself contain specific standards. This contention, however, is without merit in

the instant case since the *category of employees* in public service is *far too broad* to provide any particular guidelines. In *Perea, Orlandi* and *Gee,* the regulation pertained to a particular vocation, police officers. Durst here was employed as a public information specialist or news writer. Morrison recognized that the conduct of one kind of public employee, such as an auditor, could be held to a different standard than a publicly employed custodian or bus driver *(Morrison, supra;* cf. *Nightingale* v. *State Personnel Board,* 7 Cal.3d 507 [102 Cal.Rptr. 758, 498 P.2d 1006], involving an Industrial Accident Commission referee). Furthermore, cases such as *Rudolph* and *Orlandi* involved admitted offenses against society such as perjury and fixing a traffic ticket.

The instant case is also significantly different from *Arnett* v. *Kennedy,* 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633], where the Supreme Court held that the provision authorizing removal or suspension of federal civil service employees " 'for such cause as will promote the efficiency of the service' " (p. 158 [40 L.Ed.2d p. 35]) was not unconstitutionally vague, given the intent of Congress to lay down an admittedly general standard "in order to give myriad different federal employees performing widely disparate tasks a common standard of job protection" (p. 159 [40 L.Ed.2d p. 36]). *Arnett* merely decided that the particular statute was not overbroad on its face. The plurality opinion of Justice Rehnquist placed particular emphasis on the fact that the employee was not disciplined for protected speech but for recklessly false and defamatory statements made about another civil servant. In addition, the court was impressed by the fact that the sparse language of the statute had been interpreted by rules and regulations adopted by both the Civil Service Commission and the particular agency.

While arguably, in the present case, any vagueness inherent in the rule was, as in *Arnett,* born of the necessity of broad application of a uniform rule to the large population of district employees, the rule does not create a standard of conduct that is capable of objective interpretation by the district employees who must abide by it, the district officials who must enforce it, and by any judicial or administrative tribunal that might be called upon to review any disciplinary proceeding. The "root of the vagueness doctrine is a rough idea of fairness" *(Colten* v. *Kentucky,* 407 U.S. 104, 110 [32 L.Ed.2d 584, 590, 92 S.Ct. 1953]).

On its face, the rule proscribes conduct that is "unbecoming an employee in the public service." It is obvious that any apparent

limitation on the employee's conduct through the use of this qualifying term is illusory, for "unbecoming" has no inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned. Like beauty, its content exists only in the eye of the beholder. The subjectivity implicit in the language of the rule permits district officials to enforce the rule with unfettered discretion, and it is precisely this potential for arbitrary enforcement which is abhorrent to the due process clause. Further, where, as here, a rule contains no ascertainable standards for enforcement, administrative and judicial review can be only a meaningless gesture. There is simply no benchmark against which the validity of the application of the rule in any particular disciplinary action can be tested.

Moreover, because this vague rule does abut on sensitive First Amendment freedoms, it may operate to chill the exercise of those freedoms (*Grayned* v. *City of Rockford,* 408 U.S. 104 [33 L.Ed.2d 222, 92 S.Ct. 2294]; *Speiser* v. *Randall,* 357 U.S. 513, 526 [2 L.Ed.2d 1460, 1472-1473, 78 S.Ct. 1332]; *Keyishian* v. *Board of Regents,* 385 U.S. 589, 603 [17 L.Ed.2d 629, 640-641, 87 S.Ct. 675]). There is no authoritative interpretation of the rule, and nothing in the language of the rule purports to limit unbecoming conduct to exclude constitutionally protected expressive conduct, whatever the intent of the framers of the rule.

As stated in *Keyishian* v. *Board of Regents,* 385 U.S. 589, at page 604 [17 L.Ed.2d 629, at page 641, 87 S.Ct. 675]: " '[f]or standards of permissible statutory vagueness are strict in the area of free expression . . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' *Id.,* at 432-433. New York's complicated and intricate scheme plainly violates that standard. When one must guess what conduct or utterance may lose him his position, one necessarily will 'steer far wider of the unlawful zone . . . .' *Speiser* v. *Randall,* 357 U.S. 513, 526. For '[t]he threat of sanctions may deter . . . almost as potently as the actual application of sanctions.' *N. A. A. C. P.* v. *Button, supra,* at 433. The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform teachers what is being proscribed. See *Stromberg* v. *California,* 283 U.S. 359, 369; *Cramp* v. *Board of Public Instruction,* 368 U.S. 278; *Baggett* v. *Bullitt, supra.*" The same rationale applies to district employees.

As stated in *Pickering* v. *Board of Education*, 391 U.S. 563, at page 568 [20 L.Ed.2d 811, at page 817, 88 S.Ct. 1731]: " '[T]he theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected.' *Keyishian* v. *Board of Regents, supra,* at 605-606. At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

Thus, the rule at issue conforms to classic tests of vagueness on its face (see Amsterdam, *The Void-For-Vagueness Doctrine* (1960) 109 U.Pa.L.Rev. 67, 76). We note that the same conclusion was recently reached by the Seventh Circuit in *Bence* v. *Breier,* 501 F.2d 1185, concerning a police department rule proscribing "conduct unbecoming a member and detrimental to the service."

The district next contends that the trial court erred in concluding as a matter of law that Durst's distribution of her copy of the letter was protected by the First Amendment regardless of her intent. We think, however, that the court below properly concluded that the intent or motive of which a constitutionally protected act is done is not a proper subject of inquiry and does not destroy the protected right. (Cf. *National etc. Mfg. Co.* v. *Producers R. Co.,* 169 Cal. 740, 743 [147 P. 963], and *Keyishian* v. *Board of Regents,* 385 U.S. 589 at pp. 603, 605 [17 L.Ed.2d 629 at pp. 640-642, 87 S.Ct. 675].) We think in the instant case involving constitutionally protected speech, the court below properly concluded that Durst's interest outweighed the district's.

We turn next to the requirement of the relationship between the prohibited conduct and Durst's fitness to perform the duties required by her position as a public information officer or news writer. The record indicates that Durst was not charged with any conduct allegedly detrimental to the operation of the district's schools. As recently stated by our Supreme Court in *Adcock* v. *Board of Education,* 10 Cal.3d 60, 68 [109 Cal.Rptr. 676, 513 P.2d 900]: "It is true that the more serious and disturbing allegation against Adcock is the claim that his conduct

resulted in disharmony among the faculty and resentment from parents. Yet as *Tinker* and *L. A. Teachers* clearly point out disharmony from speech is a natural by-product and any limitation or penalty imposed in the name of prevention of disharmony is an attack on speech. Furthermore, both decisions hold that disharmony is not a sufficient state interest to compel restrictions on First Amendment activity or to penalize a teacher for exercising First Amendment freedoms. Mere fear of disruption due to the expression of unpopular views will not justify interference with the free expression of opinion. (*Tinker* v. *Des Moines School Dist., supra,* 393 U.S. 503, 508-509.)"

A governmental agency seeking to impose restrictions on the exercise of an employee's constitutional rights must demonstrate that: (1) the government's restraint rationally relates to enhancement of the public service; (2) the benefits that the public gains by this restriction outweigh the resulting impairment of the constitutional right; and (3) no alternatives less subversive to the constitutional right are available (*Bagley* v. *Washington Township Hospital · Dist.,* 65 Cal.2d 499, 501-502 [55 Cal.Rptr. 401, 421 P.2d 409]). Further, it has been established in California for some time that a person cannot be barred from public employment arbitrarily or in disregard of his constitutional rights (*Fort* v. *Civil Service Commission,* 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385]). The state may curtail First Amendment rights only when it can show a compelling state interest in so doing (*Id.* at p. 337). In order for the state to demonstrate a significant interest in First Amendment rights, it must meet criteria set out in *Bagley.* The state bears the heavy burden of demonstrating the practical necessity for limitation (*Vogel* v. *County of Los Angeles,* 68 Cal.2d 18, 29 [64 Cal.Rptr. 409, 434 P.2d 961]) and it must appear that the restrictions are not broader than required to preserve the efficiency and integrity of the public service. (*Fort, supra,* at p. 338.) ▮ In determining whether an employee should be disciplined, whatever the cause, the overriding consideration is whether the conduct harms the public service. If the misconduct bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of public service the employee may be disciplined. (*Blake* v. *State Personnel Board,* 25 Cal.App.3d 541, 550-551 [102 Cal.Rptr. 50].)

▮ With these rules in mind we proceed to examine Durst's actions in distributing the letter reprimanding her supervisor. The letter pertained to an incident involving Durst and a guest in the office. She

received a copy of the letter without request or without any indication that the matter was to be treated as confidential. As the trial court indicated, the district made no attempt to show any impairment or disruption of its function. Thus, the instant case is distinguishable from *Johnson* v. *County of Santa Clara*, 31 Cal.App.3d 26 [106 Cal.Rptr. 862], where a juvenile probation officer's posting of a poem relating to his transfer contained a reference to a bomb and thus indicated a lack of respect for authority and law that the court below had concluded was of particular significance to an office charged with administering the juvenile court.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied October 24, 1975, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1975.