[L.A. No. 30938. Nov. 30, 1978.]

BENNIE C. WILLIAMS, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

732

**COUNSEL**

Bennett B. Cohon and Steven H. Gardner for Plaintiff and Appellant.

John H. Larson, County Counsel, and Halvor S. Melom, Deputy County Counsel, for Defendants and Respondents.

## OPINION

NEWMAN, J.—*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] held that a permanent civil service employee may not be dismissed unless, "[a]s a minimum . . . preremoval safe-guards . . . include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.,* p. 215.)

In this case we hold that the *Skelly* rules apply to the dismissal of certain seasonal civil service employees. The initial question is whether plaintiff here has a right to his job that is protected by article I, section 7 of the California Constitution. A second question concerns the proce-dures that appear to have preceded plaintiff's dismissal.

### THE FACTS[1]

Plaintiff was a civil service employee of Los Angeles County and, because of his ratings, had justifiable expectations as to re-employment. During the spring of 1975 he accepted the county's offer that, beginning on June 16, he manage a swimming pool. Relying on that contract he rejected alternate employment opportunities for the 1975 summer season.

Problems arose as to the date of the pool's opening, and county counsel has advised us regarding succeeding events as follows: "Due to a delay in the opening of the Val Verde Park Pool, the Appellant was informed by the Department of Parks and Recreation on June 13, 1975, that he would be reassigned to another pool. However, on the following day the Appellant was told that he would be retained in his initial assignment to begin on a full-time basis effective immediately upon the opening of the Val Verde Park Pool to the public that summer.

"Contrary to the instructions of his superior in this regard, the Appellant presented himself at the yet unopened Val Verde Park Pool on June 16, 1975, and continued to do so each weekday up to and including June 30, 1975. On June 28, 1975, the Appellant signed and issued a time card demanding payment for an alleged eighty-eight (88) hours of service. Immediately thereafter, the Appellant was advised to resubmit

---

[1]The trial judge sustained the county's demurrer without leave to amend. As a result our "facts" are taken from plaintiff's complaint as supplemented by the attorneys' comments.

his time card reflecting the forty (40) hours of service for the period of June 16, 1975, through June 30, 1975, which he had been instructed to work. He refused and after numerous discussions and counseling with his supervisors regarding this matter continued to refuse to submit his time card showing the actual days and hours of service for which he was entitled to compensation. Thereafter, the Appellant received an unsatisfactory performance rating resulting in his release from the recurrent service. The Appellant's release was effective on July 1, 1975. He subsequently received payment for the forty hours he had been instructed to work."

## WHAT EMPLOYMENT RIGHTS WERE INFRINGED?

Plaintiff's contract assured his employment until the close of the summer 1975 work period. Under the county's civil service commission rules he was classified as a recurrent employee, and rule 15.04 provides for release at the close of the seasonal work period as follows: "When recurrent employees are to be released the release shall be made in accordance with the needs of the service, in the order determined by the appointing power."[2] Related rules read:

"15.05. *Release of Unsatisfactory Recurrent Employees.* A recurrent employee whose services have not been satisfactory may be released after service on him of a copy of his performance evaluation report showing such unsatisfactory service. . . .

"21.02. *Ratings.* Ratings of efficiency of performance shall be made for . . . recurrent employees at the close of each seasonal work period. A revised rating may be submitted by the appointing power at any time during the year upon evidence of changed work habits or performance on the part of an employee.

"21.07. *Review.* The employee may review his rating at any time with any of the persons who have signed the report or who have assisted in making the rating.

---

[2]Rule 2.38 states: "Recurrent refers to employment at certain recurring periods, such as monthly, quarterly, annually or bi-annually. 'Seasonal' and 'Recurrent' are synonymous. In reference to employment status it means current eligible employment in a recurrent position or eligibility on a recurrent re-employment register."

Compare rule 2.47 ("Temporary means employment on a basis other than permanent, probationary, or recurrent") and rule 14.01 ("No person may be employed temporarily in a permanent or recurrent position").

"19.09. *Consent of Commission.* . . . No consent need be secured to the discharge . . . of a . . . recurrent employee."

Because neither "his performance evaluation report" (rule 15.05) nor the "evidence of changed work habits or performance" (rule 21.02) appears in the record here, we cannot fully assess the "unsatisfactory" rating. For reasons we will explain, though, due process requires that an employee such as plaintiff, when faced with discharge for alleged unsatisfactory service, be accorded more than a mere opportunity to "review his rating at any time with any of the persons who have signed the report or who have assisted in making the rating" (rule 21.07). In this case, county counsel tells us, that review consisted of "numerous discussions and counseling with his supervisors." Those meetings could not have begun until June 28, and apparently they were concluded in three days or less.

### RIGHT TO RE-EMPLOYMENT

Because he was fired plaintiff lost not only his job but also his right, accorded by the pertinent rules, to a place on the county's "recurrent re-employment list." Those rules read as follows:

"2.40. *Re-employment List* means a list of names of persons . . . released from recurrent positions arranged in order of their *right to re-employment.* [Italics added.]

"15.01. *Recurrent Re-Employment List.* The Director of Personnel shall maintain departmental or divisional recurrent re-employment list by classes for each department employing persons on a recurrent service basis. The names on such a list shall be grouped in accordance with their last performance rating, as follows:

"First, all employees having ratings of 'Outstanding';

Second, all employees having ratings of 'Competent';

Third, all employees having ratings of 'Improvement Needed.'

Employees having ratings of 'Unsatisfactory' shall be omitted from the list.

"When a recurrent appointment is to be made, the appointing power, at his discretion, may appoint any one of those persons whose names appear in the highest group on the recurrent re-employment list who is available and willing to serve. Each group shall be exhausted before appointments are made from the next lower group.

"15.02. *Dropping names from Recurrent Re-Employment List.* The names of all persons on any recurrent re-employment list who receive an 'Unsatisfactory' performance rating . . . shall be dropped from said list. . . ."

Under those rules plaintiff had a right not only to his summer 1975 job but also, because of his ratings, to certain summer 1976 job prospects. The July 1, 1975, discharge cancelled both.

## DUE PROCESS OF LAW

This case does not involve "employment . . . at the pleasure of the appointing authority." (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 782-783 [97 Cal.Rptr. 657, 489 P.2d 537]; cf. *Barthuli* v. *Board of Trustees* (1977) 19 Cal.3d 717, 721-722 [139 Cal.Rptr. 627, 566 P.2d 261] [absence of "provisions governing . . . misconduct," and the opinion distinguishes situations where employee "cannot . . . be disciplined without cause"].) Plaintiff's discharge here required a showing of unsatisfactory service. (Rule 15.05.) ■ "It is, of course, widely recognized that if the employee is subject to discharge only for cause, he has a property interest which is entitled to constitutional protection." (*Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168, 175 [144 Cal.Rptr. 117]; hg. den. April 26, 1978; cf. subsec. III of Justice Stevens' dissent in *Codd* v. *Velger* (1977) 429 U.S. 624, 639 [51 L.Ed.2d 92, 104, 97 S.Ct. 882].)

■ We noted in our first paragraph above that the *Skelly* case requires (1) notice of the proposed action, (2) the reasons therefor, (3) a copy of the charges and materials on which the action is based, and (4) the right to respond, either orally or in writing, to the authority initially imposing the discipline. Plaintiff here, if he is allowed to try his case, may be able to demonstrate noncompliance with those four requirements. Further, the skimpy review that rule 21.07 provides is by no means "the

right to respond" before a reasonably impartial, noninvolved reviewer that is implied in the fourth requirement.

The demurrer should not have been sustained as to the first and second causes of action, which allege discharge without just cause and a hearing.[3] The dismissal order as to those causes of action is reversed. The case is remanded to the trial court for further proceedings.

Tobriner, J., and Mosk, J., concurred.

Bird, C. J., Richardson, J., and Manuel, J., concurred in the result.

CLARK, J., Concurring and Dissenting.—After stating the "initial question is whether plaintiff here has a right to his job that is protected by article I, section 7 of the California Constitution," the majority fail to further address that issue. Finding an undefined property interest in employment at issue, they conclude plaintiff is entitled to procedural rights afforded by *Skelly* v. *State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. Mr. Williams' discharge without according him those rights is deemed by the majority to be actionable.

The unresolved issue is whether plaintiff, as a recurrent employee, was vested with a property right subject to due process of law. (Cal. Const., art. I, § 7.) Plaintiff apparently claims such interest based on an alleged contractual relationship which, plaintiff contends, defendants cannot dispute having demurred.[1] But, as will be seen, defendants are not bound by plaintiff's allegation of a fixed term of employment and there is nothing in the record establishing plaintiff possessed such property interest.

It is well established that the terms and conditions of public employment, including term of service, are fixed by enactments of the governing body, and not by contract between agency and civil servant. (*Miller* v.

---

[3]The third cause of action alleges that "unsatisfactory service" is an impermissibly vague standard. We do not regard the phrase as incapable of objective interpretation. It is distinguishable from the phrase "conduct unbecoming an employee in the public service" that was held invalid for allowing "unfettered discretion" in the case relied on by petitioner, *California School Employees Assn.* v. *Foothill Community College Dist.* (1975) 52 Cal.App.3d 150, 155 [124 Cal.Rptr. 830].

[1]The issues are presented on sustaining of demurrer to plaintiff's complaint. Plaintiff alleges he "entered into an agreement whereby Defendants . . . employed Plaintiff . . . for the summer season of 1975 commencing on or about June 16, 1975."

*State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970], and cases cited on pp. 813-814.) This rule prevails even though the record discloses a contractual commitment for particular conditions of employment. (See *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634 [234 P.2d 981].)

Here plaintiff alleges a property right in summer employment based on contract. It is essential to his cause of action that he establish his property right to a fixed term of employment else—not having achieved permanent or other vested status—he could not claim a property interest protected by due process requirements. (Cf. *Skelly* v. *State Personnel Board, supra,* 15 Cal.3d 194, 206-207.) The allegation—and admission of such allegation by demurrer—does not establish his claimed property right. In *Boren* v. *State Personnel Board, supra,* 37 Cal.2d 634, a public employee sought to establish a similar property interest. He alleged a contractual right to state employment in a particular area. The defendant agency demurred, admitting allegations of the contractual nature of employment. This court, in affirming judgment of dismissal, stated: "It is true that a demurrer assumes the truth of the facts alleged in the complaint, and it is also true that a contract may ordinarily be pleaded by its legal effect. Implicit in plaintiff's allegations, however, is the claim that the State Personnel Board had authority to promise on behalf of the state that plaintiff would not be required to serve elsewhere than in Southern California. Since the board's authority is governed by the Constitution and by the Civil Service Act . . . the scope of that authority is a question of law and may properly be considered on demurrer. . . . The terms and conditions of civil service employment are fixed by statute and not by contract. . . . The statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith. . . ." (*Id.,* at pp. 640-641; see also *Martin* v. *Henderson* (1953) 40 Cal.2d 583, 590 [255 P.2d 416]; *City of San Diego* v. *American Federation of State Etc. Employees* (1970) 8 Cal.App.3d 308, 312 [87 Cal.Rptr. 258].) County employees, like state employees, cannot claim property rights grounded on personal service contracts. "The terms and conditions relating to employment by a public agency are strictly controlled by statute or ordinance, rather than by ordinary contractual standards . . . ." (*Markman* v. *County of Los Angeles* (1973) 35 Cal.App.3d 132, 134 [110 Cal.Rptr. 610].)

The terms of Mr. Williams' employment were fixed by rules enacted by the County of Los Angeles Civil Service Commission. (County of Los Angeles Charter, art. IX, § 34; see Cal.Const., art. XI, § 3, subd. (a).)

Their enforcement may not be delegated—for instance, to plaintiff's immediate employer, the Los Angeles County Department of Recreation and Parks. (*Schecter* v. *County of Los Angeles* (1968) 258 Cal.App.2d 391, 396-397 [65 Cal.Rptr. 739].) Plaintiff's employment rights were thus fixed by the rules of the Civil Service Commission and, for the reasons heretofore noted, were not altered by alleged contractual arrangements. The complaint thus contains no allegation of a property interest entitled to due process protections.

In *Skelly* we struggled to determine the existence of a protectable property right in the case of a state employee achieving "permanent employee" status. (*Skelly* v. *State Personnel Board, supra,* 15 Cal.3d 194, 206-208.) Today the majority completely ignore the need for ascertaining existence of the particular property interest meriting due process protections. It follows then that a public agency can no longer terminate any employee, whatever his status, without affording him full *Skelly* due process procedures.

I concur with the majority insofar as the judgment is affirmed as to count three, and I dissent insofar as the judgment is reversed as to counts one and two.

I would affirm the judgment of dismissal in its entirety.

Respondents' petition for a rehearing was denied December 27, 1978. Clark, J., was of the opinion that the petition should be granted.