OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | |
|---|---|
| OPINION | No. 89-1002 |
| of | August 28, 1990 |
| JOHN K. VAN DE KAMP | |
| Attorney General | |
| JACK R. WINKLER | |
| Assistant Attorney General | |

THE HONORABLE GERALD H. GOLDBERG, EXECUTIVE OFFICER OF THE FRANCHISE TAX BOARD, has requested an opinion on questions reframed as follows:

May an attorney employed full time by the Franchise Tax Board to research certain areas of tax law and advise the Board and other employees of the Board on such laws, including as part of his or her duties giving seminars to selected Board employees and private tax practitioners, during his or her off duty hours lawfully (a) give identical seminars to private tax practitioners for compensation; (b) teach a private law school course in tax law for compensation; or (c) compile a book upon the special area of tax law he or she has researched in performing his or her state duties incorporating therein records which he or she has prepared in performing such duties and non-record information he or she has learned in research of that special area of tax law in performing his or her state duties and publish such book for compensation?

CONCLUSION

An attorney employed full time by the Franchise Tax Board to research certain areas of tax law and advise the Board and other employees of the Board on such laws, including as part of his or her duties giving seminars to selected Board employees and private tax practitioners, during his or her off duty hours may lawfully: (a) give identical seminars to private tax practitioners for compensation; (b) teach a private law school course in tax law for compensation; and (c) compile a book upon the special area of tax law he or she has researched in performing his state duties incorporating therein records which he or she has prepared in performing such duties and non-record information he or she has learned in research of that special area of tax law in performing his or her state duties and publish such book for compensation provided he or she has complied with subdivisions (a) through (g) of Government Code section 19990 and all laws regarding disclosure of the information to others and with respect to the publication of the book has not infringed any copyright the state may have in the material incorporated therein.

ANALYSIS

California adopted the state civil service system by the enactment of article XXIV (now art. VII) of the California Constitution in the 1934 General Election. In 1937 the Legislature enacted the State Civil Service Act ("the Act") to facilitate the operation of article XXIV among other things. (Ch. 753, Stats. 1937, § 1.) Section 203 of the Act provided:

"No State officer or employee shall engage in any other activity or enterprise inconsistent or incompatible or in conflict with his duties as a State officer or employee."

In 1945 the Act was incorporated in the Government Code. Section 204 of the Act became section 19251.[1]

Section 204 of the Act made any violation of the Act a misdemeanor. However in 1957 section 204 of the Act (now § 19682) was limited and no longer applied to section 19251 (now § 19990). (See ch. 1697, Stats. 1957.) Section 19572(r) made violations of section 19251 (as it now makes violations of § 19990) grounds for discipline of the employee.

In *Genser* v. *State Personnel Board* (1952) 112 Cal.App.2d 77 an investigator for the Department of Motor Vehicles bought several cars and resold them during 1947 and 1948 when there was a great shortage of automobiles because of World War II. The court reversed a trial court order overturning his suspension by the board stating (at p. 88):

"The people of California adopted the Civil Service constitutional amendment in order to secure a high standard of public service and a high standard of conduct in public service. The State Civil Service Act was enacted to implement and carry out the constitutional amendment. The State Personnel Board was created to administer the act and to carry out the high purposes of the constitutional amendment and the act. The act states that every state employee `shall prove himself in his behavior inside and outside the service worthy of the esteem which his office or position requires,' and that `he shall not engage in any other activity or enterprise inconsistent, incompatible, or in conflict with his duties as a state officer or employee.' For an employee in the position of respondent to purchase from the dealers he was required to investigate the number of automobiles that the record shows he did purchase at the time he did purchase them, and then resell five of them within a short period, as shown by the record, is conduct which can only add to the growing criticism of the public service, and is conduct which, if the action of the State Personnel Board to eliminate it is not upheld by the courts, will eventually destroy confidence in civil service itself and do a great injustice to the thousands of civil service employees who are living up to the high standards of the constitutional amendment and the act."

In 1949 section 19251 was amended to read:

"19251. A state officer or employee shall not engage in any employment, activity, or enterprise which has been determined to be inconsistent, incompatible, or in conflict with his duties as a state officer or employee or with the duties,

---

[1] All section references are to the Government Code unless otherwise indicated.

functions or responsibilities of his appointing power or the agency by which he is employed.

"Each appointing power shall determine and prescribe, subject to approval of the board, those activities which, for employees under his jurisdiction, will be considered inconsistent, incompatible or in conflict with their duties as state officers or employees. In making this determination the appointing power shall give consideration to employment, activity or enterprise which: (a) involves the use for private gain or advantage of state time, facilities, equipment and supplies; or the badge, uniform, prestige or influence of one's state office or employment or, (b) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than the State for the performance of an act which the officer or employee, if not performing such act, would be required or expected to render in the regular course or hours of his state employment or as a part of his duties as a state officer or employee or, (c) involves the performance of an act in other than his capacity as a state officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit or enforcement by such officer or employee or the agency by which he is employed.

"Each state officer and employee shall during his hours of duty as a state officer or employee and subject to such other laws, rules or regulations as pertain thereto, devote his full time, attention and efforts to his state office or employment."

In *Shepherd* v. *State Personnel Board* (1957) 48 Cal.2d 41 the court held that no discipline could be imposed upon an employee for violation of section 19251 until the appointing power had designated the activities which were prohibited and the employee had notice thereof.

The Legislature amended section 19251 again in 1963. (See ch. 1411, Stats. 1963.) The first paragraph was changed to read:

"19251. A state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his duties as a state officer or employee or with the duties, functions or responsibilities of his appointing power or the agency by which he is employed."

The term "clearly" was added to the statutory language in 1963 (Stats. 1963, ch. 1411, § 1) and means "without doubt or question" (Webster's New Internat. Dict. (3d ed. 1966) p. 420). The second paragraph remained the same except that subdivision (d) was added to read:

"or, (d) involves such time demands as would render performance of his duties as a state officer or employee less efficient."

In 1981 section 19251 was repealed and replaced by Government Code section 19990 (see ch. 230, Stats. 1981, § 55) which now provides:

"A state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state officer or employee.

"Each appointing power shall determine, subject to approval of the department, [formerly the State Personnel Board, now the Department of Personnel Administration, see section 19815(a)] those activities which, for employees under its jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees.  Activities and enterprises deemed to fall in these categories shall include, but not be limited to, all of the following:

"(a) Using the prestige or influence of the state or the appointing authority for the officer's or employee's private gain or advantage or the private gain of another.

"(b) Using state time, facilities, equipment or supplies for private gain or advantage.

"(c)  Using or having access to, confidential information available by virtue of state employment for private gain or advantage or providing confidential information to persons to whom issuance of this information has not been authorized.

"(d)  Receiving or accepting money or any other consideration from anyone other than the state for the performance of his or her duties as a state officer or employee.

"(e)  Performance of an act in other than his or her capacity as a state officer or employee knowing that the act may later be subject, directly or indirectly to the control, inspection, review, audit, or enforcement by the officer or employee.

"(f)  Receiving or accepting, directly or indirectly, any gift, including money, or any service, gratuity, favor, entertainment, hospitality, loan, or any other thing of value from anyone who is doing or is seeking to do business of any kind with the officer's or employee's appointing authority or whose activities are regulated or controlled by the appointing authority under circumstances from which it reasonably could be substantiated that the gift was intended to influence the officer or employee in his or her official duties or was intended as a reward for any official actions performed by the officer or employee.

"(g) Subject to any other laws, rules, or regulations as pertain thereto, not devoting his or her full time, attention, and efforts to his or her state office or employment during his or her hours of duty as a state officer or employee.

"The department shall adopt rules governing the application of this section.  The rules shall include provision for notice to employees prior to the determination of proscribed activities and for appeal by employees from such a determination and from its application to an employee.  Until the department adopts rules governing the application of this section, as amended in the 1985-86 Regular Session of the Legislature, existing procedures shall remain in full force and effect.

"If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative

action, except that if such provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act."

Section 19990 changed the significance of the subdivisions of the second paragraph of the statute by providing that the conduct of state officers and employees described in those subdivisions is "deemed to fall in these categories", i.e. activities which are inconsistent, incompatible or in conflict with their duties as state officers or employees. Under section 19251 the conduct described in the subdivisions of the second paragraph were only matters the appointing power was to consider in designating the prohibited activities for the officers and employees under his or her jurisdiction. Now every state officer and employee is subject to discipline for the conduct described in subdivisions (a) through (g) of section 19990 since that conduct is deemed to be inconsistent, incompatible or in conflict with one's duties as a state officer or employee. Of course the conduct specified in subdivisions (a) through (g) is not the only conduct proscribed by the section. The appointing power must determine the activities which are prohibited for officers and employees under its jurisdiction which include, but are not limited to the conduct specified in subdivisions (a) through (g).

The Franchise Tax Board and its executive officer share the appointing power for officers and employees of the Board. (See Rev. & Tax. Code, § 19255, Gov. Code, § 15701 and 61 Ops.Cal.Atty.Gen 141 (1978).)

Our first task in this opinion is to determine whether the conduct described in the question is prohibited by subdivisions (a) through (g) of section 19990. Subdivision (a) of section 19990 prohibits state officers and employees from "using the prestige or influence of the state or the appointing authority for the officer's or employee's private gain or advantage or the private gain of another." We note that it is the use of the prestige or influence of the state or of the appointing authority, in this case the Franchise Tax Board and its executive officer, which a state officer or employee is prohibited from using for gain or advantage, not the prestige or influence of the officer or employee. Does this prohibition apply to the conduct described in the question presented? Since the employee is compensated for the conduct described the issue is whether the prestige or influence of the state or Franchise Tax Board and its executive officer is used by the employee in conducting the activities in question. If the employee asserts that his private seminars, law school course, or his book is sponsored, endorsed or approved in any way by the state or the Franchise Tax Board we believe such assertions would violate subdivision (a). On the other hand, a simple statement that the employee is employed by the Franchise Tax Board as a tax attorney would not, in our view constitute a "use" of the prestige or influence of the Board or the state for the employee's gain or advantage. It is impossible to catalog all possible conduct which would or would not constitute use of the prestige of the state or Board for the employees gain or advantage. Whether subdivision (a) is violated will depend upon facts not provided in the request for this opinion which will determine whether the employee uses the prestige or influence of the state or the Board in the three activities.

Subdivision (b) prohibits a state officer or employee from "using state time, facilities, equipment, or supplies for private gain or advantage." This prohibits the employee in question from using any of his or her state time, or any of the state facilities, equipment or supplies to prepare for or conduct the private seminars or law school course or to research or write the book referred to in the question. This clearly means that state time, facilities, equipment or supplies may not be used only for those purposes. What is not so clear however, is the private use which an employee may make of the information he learns from the use of his state time, facilities, equipment and supplies in the performance of his state duties. It seems clear that the employee in question will use the information he or she has acquired on state time to perform

state duties in conducting the private seminars, law school course and in compiling the book on his or her own time. The reality is that the employee's time is spent for both purposes, to perform their state duties and for the private endeavors which utilize the same information. Is this prohibited by subdivision (b)? We think not. All of the employee's state time is devoted to the performance of state duties. It is their off duty time for which they are paid to conduct the private seminars, the law school course and for the book. We do not think that the Legislature intended to preclude state employees from using information they learn in the course of their employment for lawful purposes, including those which may result in financial gain. Subdivision (b) would prohibit the use of state facilities, equipment and supplies such as documents prepared on state equipment for state purposes in preparation or conduct of the private seminars, law school course or the writing of the book in question. It would not prevent the employee, on his or her own time from obtaining a copy of any public record available to the general public under the State Public Records Act (Gov. Code, § 6250 et seq.) by paying the prescribed fee therefore.

Subdivision (c) prohibits a state officer or employee from "using, or having access to, confidential information available by virtue of state employment for private gain or advantage or providing confidential information to persons to whom issuance of this information has not been authorized." We think that "confidential information" in subdivision (c) means information which is subject to a law which prohibits or limits its disclosure to others. There are many laws which prohibit or limit the disclosure of particular records or information held by governmental agencies. By way of example Revenue and Taxation Code section 19282 makes it a misdemeanor for state employees to disclose information contained in state income tax returns. On the other hand the California Public Records Act (Gov. Code, § 6250 et seq.) requires disclosure of most public records in the hands of public agencies. The information revealed in the private seminars, tax course and book contemplated in the questions must comply with all laws which prohibit or limit disclosure of information held by public agencies. What the law is as revealed by constitutions, statutes, judicial decisions, regulations, is not confidential though some of it may be quite complex. However, certain procedures which the Board may utilize in enforcing the tax laws may well be confidential, such as the method used to determine which income tax returns will be subjected to a special audit. (See Rev. & Tax. Code, § 19282.5.)

Subdivision (d) prohibits state officers and employees from "receiving or accepting money or any other consideration from anyone other than the state for the performance of his or her duties as a state officer or employee." The money paid the employee for conducting the private seminars, teaching the law school course or for the book contemplated by the question would be paid, received and accepted for those private endeavors, not for the performance of his or her duties as a state officer or employee. On the other hand subdivision (d) would prohibit the employee from accepting any money from anyone other than the state for conducting the seminars required by his or her state duties.

Subdivision (e) prohibits a state officer or employee from "performance of an act in other than his or her capacity as a state officer or employee knowing that the act may later be subject, directly or indirectly to the control, inspection, review, audit, or enforcement by the officer or employee." It would not appear that conducting the private seminar, teaching the law school course, or compiling the book in question would ordinarily involve any inspection, review, audit, enforcement or other control activities required by his or her state duties.

Subdivision (f) prohibits any state officer or employee from "receiving or accepting, directly or indirectly, any gift, including money, or any service, gratuity, favor, entertainment, hospitality, loan, or any other thing of value from anyone who is doing or is seeking to do business of any kind with the officer's or employee's appointing authority or whose activities are regulated or controlled by the appointing authority under circumstances from which

it reasonably could be substantiated that the gift was intended to influence the officer or employee in his or her official duties or was intended as a reward for any official actions performed by the officer or employee." Conducting a private seminar, teaching the law school tax course or compiling the book contemplated in the question would not appear to involve anyone who was doing or seeking to do business with the Franchise Tax Board. Are the activities of those sponsoring the private seminars, the law school or the compilation of the book "regulated or controlled" by the Franchise Tax Board and its executive officer within the meaning of subdivision (f)? While those activities may result in income subject to taxes which are collected by the Franchise Tax Board the tax collection function neither regulates nor controls the taxpayer's activities as those terms are used in subdivision (f). We think the regulation and controls contemplated in that section are those of an administrative agency or board established to regulate particular professions, occupations or activities by promulgating regulations for the same as authorized by law or by enforcing laws and regulations governing the same or by both.

Subdivision (g) prohibits state officers and employees from "not devoting his or her full time, attention, and efforts to his or her state office or employment during his or her hours of duty as a state officer or employee" subject to any other laws, rules, or regulations as pertain thereto. This would prohibit the employees in question from using state time to prepare for private seminars, the law school course or compile the book by any activity which is not also performing some duty of his or her state office or employment.

It is apparent that the private seminars and law school tax course may be conducted and the book complied in a manner which violates one or more of the subdivisions of section 19990. It is equally apparent that those activities may be conducted in a manner which does not violate any of those subdivisions. It follows that these activities must be conducted in a manner which conforms to subdivisions (a) through (g) to be lawful. However, our inquiry is not limited to those subdivisions. The second paragraph of section 19990 requires the appointing power to designate for employees under its jurisdiction those activities which are inconsistent, incompatible or in conflict with their duties as state officers and employees. While the conduct described in subdivisions (a) through (g) are deemed to be included in those categories the categories are not limited to the conduct described in those subdivisions.

Pursuant to the Legislature's mandate contained in the second paragraph of section 19990, the Franchise Tax Board ("Board") has adopted an Incompatible Activities Statement ("Statement") setting forth those activities which the Board has determined are inconsistent, incompatible, or in conflict with the duties of Board employees. We assume this Statement was adopted in accordance with the rules of, and has been approved by, the Department of Personnel Administration. The Statement expressly prohibits the activities enumerated in subdivisions (a) through (g) as quoted above. The Statement also has a "specific prohibited activities" segment setting forth additional prohibited activities. Before considering these prohibitions in detail we will review the cases which discuss the constitutional limits of governmental power to control the off duty conduct of its officers and employees.

In *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 239 the court observed that "The power of the state to regulate professions and conditions of government employment must not arbitrarily impair the right of the individual to live his private life, apart from his job, as he deems fit." In *Morrison* a school teacher's credential was revoked under a statute authorizing discipline for unprofessional or immoral conduct. He claimed that the statute's language was so vague that he was denied due process. The court stated (at p. 231) that "Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies."

In *California School Employee Assn.* v. *Foothill Community College Dist.* (1975) 52 Cal.App.3d 150, 154 the court stated the constitutional test as follows:

"The applicable test is `(1) whether the regulation is sufficiently specific to provide fair warning of which conduct is prohibited and which permitted; and (2) whether there exists a relationship or nexus between the prohibited conduct and the employee's fitness to perform the duties required by the position.' (Also quoted in *Mazzola* v. *City and County of San Francisco* (1980) 112 Cal.App.3d 141, 149.)

In *Nightingale* v. *State Personnel Board* (1972) a state civil service employee was suspended for "failure of good behavior" in violation of Government Code section 19572(t). On appeal the employee claimed the statute was unconstitutionally vague citing *Morrison*. The court made this response to the claim (at p. 512):

"As we recognized in *Morrison*, however, vagueness can be cured by a more precise judicial construction and application of the statute in conformity with the legislative objectives. In *Morrison* itself, we upheld the prohibition against `immoral and unprofessional conduct involving moral turpitude' (Ed. Code, § 13202) by limiting that phrase to such conduct as indicates an unfitness to teach."

It was in the wake of *Morrison* and *Nightingale* that the court interpreted former Government Code section 19251 in *Keely* v. *State Personnel Board* (1975) 53 Cal.App.3d 88, 94-95. Keely was a prison guard who was dismissed for purchasing and operating a bar in violation of a Department of Corrections rule prohibiting its employees from "employment at any bar" adopted pursuant to former Government Code section 19251. The court responded to Keely's claim that he was being punished under a vague standard as follows:

"A similar provision in subdivision (t) of section 19572 of the Government Code was upheld as necessary and neither vague nor uncertain in *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 512. The court noted that the `*failure of good behavior must be of such a nature that it reflects upon the employee's job, and cannot be just any behavior which the agency might consider improper.*' (Italics in original.) Similarly here, the department can only prohibit activities which are `clearly inconsistent, incompatible, in conflict with, or inimical' to his employment. . . ."

We read this language in the *Keely* case as a judicial interpretation of former section 19251 which limits the authority granted to the appointing power to prohibit only that conduct which is "clearly inconsistent, incompatible, in conflict with, or inimical" to the employee's employment even though the requirement that appointing powers make determinations in this regard for their employees in the second paragraph of section 19251 did not contain the words "clearly" or "inimical". This judicial limitation was made to make the rule making authority granted by the statute sufficiently certain to satisfy constitutional due process requirements. Since the Legislature used the same language when it replaced section 19251 with section 19990 in 1981 we believe it intended the same language to have the same meaning given earlier in the *Keely* case. See *Los Angeles Metropolitan Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684. (When legislation has been judicially construed and a subsequent statute, on the same or an analogous subject, is framed in identical or substantially similar language, the courts will ordinarily presume that the legislature intended that the language used in the later statute receive a like interpretation.) We conclude that to be prohibited by section 19990 an

employee's conduct must not only violate the determination of the appointing authority as made here in the Statement of Incompatible Activities, the conduct must also "be clearly inconsistent, incompatible, in conflict with or inimical" to his employment.

In *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736 a police officer's application to engage in off-duty employment as a civil process server for a hospital was denied. He claimed that Government Code section 1126 limited the city's authority to prohibit his off-duty employment to four kinds of conduct specified in the statute, none of which applied to serving process for the hospital. The court rejected the claim holding that in section 1126 the four areas specified in the statute were intended as a guide, and that local agencies "retain discretion to proscribe incompatible employments not specifically delineated in the statute." In its opinion (at p. 744) the court noted that section 1126 was patterned after section 19251 and stated that "statute plainly permitted state agencies to prohibit incompatible collateral activities not specifically delineated in the statute." The court added the following paragraph concerning section 19990:

"In 1981, section 19251 was repealed and replaced by section 19990 (Stats. 1981, ch. 230, §55, pp. 1166-1168), and in 1986 section 19990 was amended to read, in pertinent part, as follows: `Each appointing power shall determine, subject to approval of the department, those activities which, for employees under its jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees. Activities and enterprises deemed to fall in these categories <u>shall include, but not be limited to</u>, all of the following. . .' (Stats. 1986, ch. 1344, §1, italics added.) Thus, the 1986 amendment leaves no doubt that the Legislature's intent was not to exhaust, but merely to illustrate, the kinds of off-duty activities which a state agency may deem to be incompatible with the official duties and responsibilities of its officers and employees."

There is no reference in the *Long Beach* case to *Morrison*, *Nightingale*, or *Keely* or any discussion of the constitutional limits on the kinds of off-duty conduct the state or local agencies may prohibit under sections 1126 or 19990. Thus the *Long Beach* case leaves undisturbed the interpretation of section 19251 announced in the *Keely* case which is carried into section 19990. We conclude that while appointing powers of state agencies have authority under section 19990 to prohibit activities of their officers and employees which are inconsistent, incompatible or in conflict with their duties as state officers and employees other than those enumerated in the section that authority is limited to prohibiting those activities which are "clearly inconsistent, incompatible, in conflict with, or inimical" to their state employment. (*Keely* v. *State Personnel Board*, *supra*.)

Next we examine the specifically prohibited activities segment of the Statement in the light of the judicial construction of section 19990 outlined above. Those provisions which may have application to the conduct contemplated by the questions presented for this opinion read as follows:

"No officer or employee of the department shall: . . .

"4. Engage in any employment of which its nature is parallel to or closely allied with the services provided to the State by the employee, including but not limited to: engage in any accounting, auditing, bookkeeping, legal, collection, tax consulting work, or in the preparation of federal or state income tax returns, Homeowner and Renter Assistance Claims, or reports or statements required by the Political Reform Act, for compensation.

9. 89-1002

"5. Enter into any business, partnership, profit sharing or employment arrangement with any accounting, auditing, bookkeeping, legal or tax consulting firm which is in conflict with the employee's job duties. . . ."

Paragraph 4 is not a model of clarity. The introduction makes the prohibitions applicable to all officers and employees of the department. The last two words of the paragraph prohibits only employments engaged in "for compensation." Each officer and employee of the department is prohibited from engaging in any outside employment for compensation which by its nature is "parallel to or closely allied with the services provided to the State by the employee" or officer. Application of this prohibition requires a comparison between the services provided in the outside employment with those provided to the State by the employee or officer in question. It is only when the two services are either "parallel" or "closely allied" that the prohibition applies. It does not prohibit department officers and employees from engaging in any of the activities enumerated in Paragraph 4 except those which are "parallel to or closely allied with" the services provided to the State by the officer or employee in question. We interpret the word "parallel" in this context to mean that the outside employment consists of the same kind of work that the employee does for the state. Similarly we interpret the words "closely allied with" to mean that the outside employment will have a strong connection or relationship with the services the employee provides to the state.

After determining whether the outside activity is parallel or closely allied with the employee's state duties we must then determine whether the outside activity is "clearly inconsistent, incompatible, in conflict with, or inimical" with the employees state duties as required by the *Keely* case.

Paragraph 5 prohibits department officers and employees from entering into one of four specified "arrangements" with any one of five specified kinds of "firms."

However, the prohibition is expressly limited to those arrangements which "conflict with the employee's job duties." This express limitation confines the rule to the rule making authority of the Board as interpreted in the *Keely* case by requiring a "conflict" between the private activity and the state employment.

In 13 Ops.Cal.Atty.Gen. 84, 86-87 (1949), we stated with respect to the terms "inconsistent," "incompatible," and "conflict" as used in section 19251:

"The word `inconsistent' is defined in Webster's New Standard Dictionary as `Not consistent; incompatible; incongruous; inharmonious,' and the word `conflict' is defined by the same authority as `To meet in collision; to clash; to be in opposition or at variance.' These words, while perhaps not fully synonymous with the word `incompatible' used in the section, would appear to bear, on the whole, comparable meaning. The word `incompatible' is one of general usage, but it is a term difficult to define with precision when used in connection with public employment. It is used generally with respect to offices, rarely with respect to employments of lesser statute. Incompatibility between two offices has been said to exist where `the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one incumbent to retain both.' [Citation.] In McQuillin on Municipal Corporations (2nd Ed. Revised) Vol. 2, page 142, it is said: `Offices which are declared by the adjudications to be incompatible are such as bear a special relation to each other; or being subordinate to and interfering with the other so as, in the language of

10.                                                                89-1002

Coke, to induce the presumption that they cannot be executed with impartiality and honesty.'

"The following language from 46 C.J. 942 is cited with approval in the case of *People* ex rel. *Chapman* v. *Rapsey*, 16 Cal.2d 636, 107 Pac.2d 388: `The inconsistency, which at common law makes offices incompatible does not consist in the physical impossibility to discharge the duties of both offices, but lies rather in a conflict of interest, as where one is subordinate to the other and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one of the offices has the power to remove the incumbent of the other, or to audit the accounts of the other.'

"We are of the view that the word as used in section 19251 bears this same general significance and that the rules which have been announced in the adjudications with respect to incompatibility of office should be applied in the construction of the section with respect to incompatibility between offices or employments and the activity or enterprise in which the officer or employee proposes to engage.

"Accordingly, in order to determine the second question it becomes necessary to discover whether there is such a conflict in interest between the public employment and the private employment as to make it improper for the State employee to engage in both."

Each situation must of course be examined in light of the particular facts involved. (See 26 Ops.Cal.Atty.Gen. 273, 274 (1955) ["the question of incompatibility in any given case is largely a question of fact"]; 13 Ops.Cal.Atty.Gen. 84, 91 (1949) ["in the determination of whether any particular activity of an employee is incompatible with his official duties, careful study should be made of the factual . . . problems involved, and conclusions here reached with respect to particular types of work are subject to modification in accordance with the further facts developed"]; 4 Ops.Cal.Atty.Gen. 202, 204 (1944) ["whether duties are or are not required to be performed by virtue of a person's State employment and whether outside activities do or do not conflict with State duties will depend upon the facts of each particular case].)[2]

The first part of the question asks whether an attorney employed full time by the Franchise Tax Board to give seminars to other state employees and designated private practitioners upon particular areas of tax law on his or her state time may lawfully give seminars upon the same materials to private tax practitioners for compensation during off duty hours. Giving such seminars would clearly be an employment which is parallel to the services the employee is providing to the department within the meaning of paragraph 4 in the Statement. Since the seminars would be given for compensation they would literally violate the prohibition in paragraph 4 of the Board's Statement. However, as our discussion of the cases construing section 19990 revealed, the authority to prohibit off-duty activities by state agencies is limited by *Keely* v. *State Personnel Board*, supra, to those activities which are "clearly inconsistent, incompatible, in conflict with, or inimical" to the employee's state duties. We assume that giving the seminars in question may be accomplished under circumstances which would not come within any of the activities and enterprises specified in subdivisions (a) through (g) of section 19990 and

_____

[2]  We note that the facts presented do not concern Board employees having a financial interest in contracts made by them in their official capacities (see § 1090) or having a financial interest in governmental decisions (see § 87100).

that seminars in question would not violate any of those subdivisions. There is nothing confidential about the law including particular areas of the tax laws which may be technical and complex to many. Increasing the understanding of private practitioners on the tax laws would appear to further the Board's duty to enforce those laws. We fail to see how providing seminars on particular areas of the tax laws to private practitioners in the employee's off duty hours would in any way be inconsistent, incompatible, in conflict with, or inimical to the identical service the attorney is rendering to the Board and its employees and the private tax practitioners attending the seminars given on the employee's state time. Since such conflict must be "clear" it follows that application of paragraph 4 of the Statement to such seminars would exceed the authority granted to the Board by section 19990 as that section has been construed in the *Keely* case. We conclude that an attorney employed full time by the Franchise Tax Board to give seminars to other state employees and private practitioners upon particular areas of tax law may lawfully give seminars upon the same materials to private tax practitioners for compensation during off duty hours.

The question next asks whether an attorney employed full time by the Franchise Tax Board to research certain areas of tax law and advise the Board and other employees of the Board on such laws may lawfully teach a course in tax law in a law school for compensation during off duty hours? We assume that the areas of tax law which the attorney researches and advises the Board and other employees on will not be identical to the subjects to be taught in tax law course in question. Thus the service to the state and that for the law school will not be "parallel" within the meaning of paragraph 4 of the Statement but are they "closely allied" within the meaning of the same paragraph. The nature of researching special areas of tax law and advising others regarding the same would not appear to have a connection or relationship with teaching the fundamentals of tax law (including the special areas involved in the state duties) which is very strong. We conclude that such teaching would not be "closely allied" with the state duties within the meaning of paragraph 4. However, even if teaching were considered to be closely allied with the state duties in question, and thus is prohibited by the literal application of paragraph 4, as in the first question we must consider whether the prohibition was within the department's powers which are limited by the *Keely* case to those activities which are "clearly inconsistent, incompatible, in conflict with, or inimical." We fail to see how enlightening law students in the fundamentals or even intricacies of the tax laws would in any way be inconsistent, incompatible, in conflict with or inimical to the services the teacher is providing to the state. Training law students, like the training of members of bar in the intricacies of our tax laws would appear to further rather than conflict with the Board's duties to enforce those laws. Since such conflict must be "clear" it follows that application of paragraph 4 of the Statement to the teaching of tax law in a law school would exceed the authority granted to the Board by section 19990 as that section has been construed in the *Keely* case. We conclude that an attorney employed full time by the Franchise Tax Board to research certain areas of tax law and advise the Board and other employees of the Board on such laws may lawfully teach a course in tax law in a law school for compensation during off duty hours.

The question also asks whether an attorney employed full time by the Franchise Tax Board to research certain areas of tax law and advise the Board and other employees of the Board on such laws may lawfully compile in a book materials which he or she has learned in such employment during his or her off duty hours without using state equipment or supplies and collect royalties on the publication of the book? The circumstances in which a state employee might compile the information learned in his or her employment in a book are many and varied so this opinion will make no attempt to consider all of the possibilities. Instead we shall discuss the laws which may constrain the activity described to ascertain whether there are circumstances under which it may be done lawfully.

As we pointed out above the compilation and publication of the book would have to comply with subdivisions (a) through (g) of section 19990.  It would also have to comply with all laws regulating disclosure of the materials contained in the book.  Finally, since the publication of a book is involved we think a brief reference to copyright law is appropriate.  Ordinarily when a person produces materials which may be copyrighted while in the employ of another the employer is considered the author of the work and the initial owner of the copyright unless there is a written agreement between them providing otherwise.  (See 17 U.S.C. § 201(b).)  Since the information which is incorporated in the book in question was obtained by the employee in performing his state duties on state time it is possible that the state might assert that it owns the copyright upon the materials incorporated in the book.  We must therefore condition our conclusion upon the assumption that the publication of the book in question will not infringe any copyright the state may own in any of the materials contained in the book.

We conclude that an attorney employed full time by the Franchise Tax Board to research certain areas of tax law and advise the Board and other employees of the Board on such laws, including as part of his or her duties giving seminars to selected Board employees and private tax practitioners, during his or her off duty hours may lawfully: (a) give identical seminars to private tax practitioners for compensation; (b) teach a private law school course in tax law; and (c) compile a book upon the special area of tax law he or she has researched in performing his state duties incorporating therein records which prepared in performing such duties and non-record information he or she has learned in research of that special area of tax law in performing his or her state duties and publish such book for compensation provided he or she has complied with subdivisions (a) through (g) of Government Code section 19990 and all laws regarding disclosure of the information to others and with respect to the publication of the book has not infringed any copyright the state may have in the material incorporated therein.

* * * * *

13.                                                          89-1002