TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

| | | |
|---|---|---|
| OPINION | : | No. 98-1201 |
| of | : | March 30, 1999 |
| BILL LOCKYER<br>Attorney General | : | |
| CLAYTON P. ROCHE<br>Deputy Attorney General | : | |

THE UPPER SAN JOAQUIN RIVER ASSOCIATION has requested leave to sue in quo warranto Edward M. Kashian upon the following question:

ISSUES OF FACT OR LAW

Is Edward M. Kashian unlawfully holding the office of governing board member of the San Joaquin River Conservancy?

CONCLUSION

Whether Edward M. Kashian is unlawfully holding the office of governing board member of the San Joaquin River Conservancy does not present a substantial question of fact or law; accordingly, the application for leave to sue in quo warranto is denied.

PARTIES

The Upper San Joaquin River Association ("Association") contends that Edward M. Kashian ("Kashian") is not qualified to hold the office of governing board member of the San Joaquin River Conservancy ("Conservancy").

MATERIAL FACTS

On January 13, 1998, the Board of Supervisors of Fresno County appointed Kashian to the office of governing board member of the Conservancy for a four-year term. The Conservancy was established by the Legislature in 1992 as part of the State Resources Agency with the dual purposes of acquiring and managing land in the San Joaquin River Parkway ("Parkway"), consisting of approximately 6,000 acres on both sides of the San Joaquin River in Madera and Fresno Counties, for recreational and educational uses and wildlife protection.

The governing board of the Conservancy consists of nine voting members and four non-voting ex-officio members, consisting of city, county, district, and state representatives and local residents.

Kashian is a director of the San Joaquin River Parkway and Conservation Trust ("Trust"), a non-profit public benefit corporation, which has as one of its purposes the acquisition of property within the Parkway for wildlife habitat preservation and recreational use.

ANALYSIS

In determining whether to grant leave to sue in quo warranto, we consider whether there exists a substantial question of fact or law for determination by a court, and if so, whether it would be in the public interest to grant leave to sue. (81 Ops.Cal.Atty.Gen. 240, 241 (1998); 81 Ops.Cal.Atty.Gen. 98, 100 (1998).)

1. Incompatible Offices

The first issue to be resolved is whether Kashian is holding two public offices by being a Conservancy board member and a director of the Trust in violation of the rule prohibiting the holding of incompatible public offices.

The prohibition against dual office holding is of common law origin and is applicable in California. (See Civ. Code, § 22.2; *Mott* v. *Horstmann* (1950) 36 Cal.2d 388,

391-392; *People* ex rel. *Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 640-644; *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 319.) Offices are incompatible if there is any significant clash of duties or loyalties between the offices, or if one office has a supervisory, auditory, or removal power over the other.  Acceptance of the second office constitutes an automatic resignation from the first office.  However, the rule is applicable only where two public offices are being held simultaneously.  It does not apply when one of the offices is a nongovernmental, private office. (See 81 Ops.Cal.Atty.Gen. 274, 275 (1998); 80 Ops.Cal.Atty.Gen. 74, 75-76 (1997); 78 Ops.Cal.Atty.Gen. 362, 363 (1995); 73 Ops.Cal.Atty.Gen. 183, 184 (1990); Cal.Atty.Gen., Indexed Letter, No. IL 66-94 (June 21, 1966).)

Here, Kashian's position as a director of the Trust, a private non-profit corporation, does not meet the standard of an "office" for purposes of the dual office prohibition.  Thus, no substantial question of fact or law is presented by the Association concerning the prohibition against holding incompatible public offices.

2.  Incompatible Employment, Activity, or Enterprise

Next we address the Association's contention that Kashian's service on the governing board of the Conservancy violates the terms of Government Code section 1126.[1] Section 1126 provides:

"(a) Except as provided in Sections 1128 and 1129, a local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed.  The officer or employee shall not perform any work, service, or counsel for compensation outside of his or her local agency employment where any part of his or her efforts will be subject to approval by any other officer, employee, board, or commission of his or her employing body, unless otherwise approved in the manner prescribed by subdivision (b).

"(b) Each appointing power may determine, subject to approval of the local agency, and consistent with the provisions of Section 1128 where applicable, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local

---

[1] All references to the Government Code prior to footnote 4 are by section number only.

agency officers or employees. An employee's outside employment, activity, or enterprise may be prohibited if it: (1) involves the use for private gain or advantage of his or her local agency time, facilities, equipment and supplies; or the badge, uniform, prestige, or influence of his or her local agency office or employment or, (2) involves receipt or acceptance by the officer or employee of any money or other consideration from anyone other than his or her local agency for the performance of an act which the officer or employee, if not performing such act, would be required or expected to render in the regular course or hours of his or her local agency employment or as a part of his or her duties as a local agency officer or employee or, (3) involves the performance of an act in other than his or her capacity as a local agency officer or employee which act may later be subject directly or indirectly to the control, inspection, review, audit, or enforcement of any other officer or employee or the agency by which he or she is employed, or (4) involves the time demands as would render performance of his or her duties as a local agency officer or employee less efficient.

"(c) The local agency shall adopt rules governing the application of this section. The rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee. Nothing in this section is intended to abridge or otherwise restrict the rights of public employees under Chapter 9.5 (commencing with Section 3201) of Title 1.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The terms of section 1126 have no application here. The Conservancy was created by the Legislature as part of the State Resources Agency (Pub. Resources Code, § 32510), and hence Kashian is a state officer rather than a "local agency officer or employee" for purposes of section 1126. Although the Board of Supervisors of Fresno County was Kashian's "appointing power," he is not under the board's jurisdiction as a member of the Conservancy's governing board. Kashian's powers and duties are governed by state law in his capacity as a state officer.[2]

Accordingly, we conclude that the requirements of section 1126 do not present a substantial question of fact or law with reference to Kashian's appointment to the

---

[2] We note that section 1126 is not self executing. (*Mazolla* v. *City and County of San Francisco* (1980) 112 Cal.App.3d 141; 81 Ops.Cal.Atty.Gen. 274, 277 (1998); 70 Ops.Cal.Atty.Gen. 157, 160 (1987).)

governing board of the Conservancy.

### 3. Additional Criteria for Appointment

The final contention[3] raised by the Association is that Kashian is not qualified to be a governing board member of the Conservancy because he does not meet the criteria for appointment set by the Board of Supervisors of Fresno County.

Under the San Joaquin River Conservancy Act (Pub. Resources Code, §§ 32500-32538),[4] members of the governing board of the Conservancy are appointed by specified public agencies. Kashian was appointed as "a property owner of San Joaquin River bottom" by the Board of Supervisors of Fresno County pursuant to the following terms of section 32515, subdivision (b)(5):

"(A) Except as provided in subparagraph (C), one resident of Fresno County appointed by the Board of Supervisors of Fresno County from a list submitted by environmental organizations within that county. The board of supervisors may establish additional criteria for that appointment.

"(B) Except as provided in subparagraph (C), one resident of Madera County appointed by the County Board of Supervisors of Madera County who is a property owner of San Joaquin River bottom. The board of supervisors may establish additional criteria for that appointment.

"(C) Fresno County and Madera County shall rotate appointment qualifications pursuant to this paragraph so that each alternative time Madera County shall appoint a resident from a list submitted by environmental organizations within that county and Fresno County shall appoint a property owner of San Joaquin River bottom in that county."

The Association contends that for purposes of section 32515, subdivision (b)(5), the Board of Supervisors of Fresno County has adopted as "additional criteria" Administration Policy No. 35 ("Policy"), dated January 28, 1992, as follows:

"<u>POLICY STATEMENT</u>

---

[3] Originally the Association raised various other issues, such as that Kashian is not a San Joaquin River bottom property owner as required by the statute under which he was appointed (Pub. Resources Code, § 32515, subd. (b)(5)), but it has now reduced its contentions to the three specified herein.

[4] All references hereafter to the Public Resources Code are by section number only.

"In addition to any Federal or State conflict of interest requirements which may apply, no member of any board, commission or committee shall make, participate in making or in any way attempt to use their position to influence a decision in which he or she knows or has reason to know that he or she or their spouse has a financial interest. In all such cases, the affected member shall disclose their interests in the records of the board, commission or committee and shall refrain from participating in all discussions and votes concerning the matter in which they or their spouse has a financial interest.

"The purpose of this policy is not only to avoid actual improprieties, but also the appearance of possible improprieties. Therefore, it is the policy of the Board of Supervisors that any doubts as to whether a member shall refrain from participation in a particular matter should be resolved in favor of non-participation.

"While recognizing that state law and regulations may specify categories of memberships on certain boards, commissions and committees, to the extent possible, no one shall be appointed to a board, commission or committee which recommends funding allocations to community based organizations, who is or whose spouse is a director, or officer of an agency or organization which competes in the funding process before that board, commission or committee.

"<u>MANAGEMENT RESPONSIBILITY</u>

"The County Administration Officer shall provide all nominees to County boards, commissions and committees with copies of the Board's Conflict of Interest policy. Additionally, the County's staff to each board, commission, and committee shall be provided with a copy of the application of each appointee so as to be able to assist in monitoring compliance with the conflict of interest policy. Monitoring shall include annual review of appointee circumstances as they may change during each appointees term of office.

"<u>APPLICANT/NOMINEE RESPONSIBILITY</u>

"All applicants shall state on their application for appointment what affiliation, if any, they or their spouse has with public service agencies. Additionally, all applicants shall certify prior to their participation as a voting representative of the Board of Supervisors that they have read this policy and can serve free of any conflict of interest. The certification will be made by an

applicant/nominee by signing the application for their appointment. Further, should any conflict of interest arise during the appointee's term of office, the appointee shall so declare and abstain from participation in the proceeding and business as it relates to the area of conflict.

> "For those boards, commissions and committees which recommend funding allocations to the Board of Supervisors, no member shall participate in any discussions or decisions related to an agency of which the member or the member's spouse is a director or officer. Additionally, unless state law or regulation require otherwise, any such member shall also refrain from participation in discussions or decisions related to proposals which are in direct competition with a proposal submitted by the agency of which the member or member's spouse is a director or officer."

The Association's contention is that the Trust, of which Kashian is a director, has an interest in seeking public funds from the Conservancy (see § 32537) to serve its purposes of acquiring and preserving property within the Parkway and thus Kashian "is . . . a director . . . of an agency or organization which competes in the funding process before" the Conservancy in violation of the Policy.

We reject the suggestion that the Policy precludes Kashian's appointment to the Conservancy's governing board. First, by its own terms, the Policy is applicable to "County boards, commissions and committees," and the Conservancy is not such a public agency; it is, instead, a state agency. Moreover, the Policy's specific funding restrictions refer to "boards, commissions and committees which recommend funding allocations to the Board of Supervisors," which the Conservancy does not do but rather makes its own grants. (§ 32537.) The Policy itself recognizes that conflicts will arise, requiring that "any . . . member shall . . . refrain from participation in discussions or decisions related to proposals which are in direct competition with a proposal submitted by the agency of which the member . . . is a director . . . ." Accordingly, the Policy is not a direct prohibition against appointments but rather is to be followed "to the extent possible." Finally, the Policy may be waived at any time in the discretion of the Board of Supervisors of Fresno County. (See *Rinaldi* v. *United States* (1977) 434 U.S. 22; *Peterson* v. *City of Long Beach* (1979) 24 Cal.3d 238, 249; *Weis* v. *State Board of Equalization* (1953) 40 Cal.2d 772, 776-777; *Goleta Valley Community Hospital* v. *Department of Health Services* (1983) 149 Cal.App.3d 1124, 1128; 1 Davis & Pierce, Administrative Law Treatise (3d ed. 1994) § 6.2, p. 228.)

We conclude that the requirements of the Policy, whether as "additional criteria" (§ 32515, subd. (b)(5)) or otherwise, do not present a substantial question of fact or law relating to Kashian's appointment to the governing board of the Conservancy. In so concluding, we note that as a state officer, Kashian is subject to numerous laws regarding

conflicts of interest.  (See Gov. Code, §§ 1090-1097, 8920-8926, 87100-87104.)


## PUBLIC INTEREST

Having concluded that no substantial question of fact or law has been presented for judicial resolution, we find that it would not be in the public interest to grant the Association's application.

Leave to sue in quo warranto is DENIED.

\* \* \* \* \*